## ATTORNEY GRIEVANCE COMMISSION OF MARY-LAND *v.* ROBERT STEPHEN SHERMAN

[Misc. (BV) No. 31, September Term, 1982.]

*Decided October 6, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Kendall R. Calhoun, Assistant Bar Counsel,* with whom was *Melvin Hirshman, Bar Counsel,* on the petition, for petitioner.

*Joseph F. Murphy, Jr.,* for respondent.

PER CURIAM:

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition for disciplinary action, pursuant to Maryland Rule BV9, against Robert Stephen Sherman, alleging violations of the disciplinary rules of the Code of Professional Responsibility. The matter was referred to Judge Robert I. H. Hammerman of the Circuit Court for Baltimore City to make findings of fact and conclusions of law, pursuant to Maryland Rule BV10. After an evidentiary hearing, Judge Hammerman made the following findings:

"The petition alleged that the respondent engaged in misconduct, as defined by Rule BV1 (j) by reason of two complaints filed with the Commission — the complaint of Cecelia Jackson and the complaint of Ransom William Dean. A hearing was held on May 11-12, 1983 with counsel representing both parties.

This Court finds by clear and convincing evidence the following facts.

## I. The Jackson Complaint

On September 11, 1978 the respondent agreed to represent Larry and Ronald Jackson, the two sons of the complainant, on murder, robbery and handgun charges. A non-jury trial was held before Chief Judge J. Harold Grady on February 13, 1979. Ronald was acquitted, and Larry was found guilty

of felony murder and handgun charges. On June 1, 1979 Larry was sentenced to life imprisonment for felony murder and five years for the handgun charge, to be served consecutively.

The respondent agreed on September 11, 1978 to represent both defendants, he did so for a fee of $1,750.00, and he stated to Mrs. Jackson that the fee was to cover all appeals as well — 'all the way to the Supreme Court', as the complainant testified respondent told her. Respondent testified that he said 'all the way to the Supreme Bench'. This Court disbelieves respondent's testimony on this point, finding not only that complainant was credible in all of her testimony but also recognizing the common usage of 'all the way to the Supreme Court' but not that of 'all the way to the Supreme Bench'. Fourteen hundred dollars of the fee was paid prior to the trial.

Even before June 1, 1979, complainant discussed with respondent the matter of an appeal of Larry's conviction. On the day of sentencing respondent assured complainant that he would see Larry in the institution and would start the appeal process immediately.

On June 20, 1979 respondent filed a Notice of Appeal and directed R. Calvin Wade, the court reporter, to prepare a transcript of the proceedings. On June 20, 1979 Mr. Wade advised respondent he would need $500.00 as a deposit and received a message that respondent had called to assure him that he would have this amount by July 9, 1979. This was the last Mr. Wade heard from respondent until a chance meeting on the street in January, 1980. On June 27, 1979 Mr. Wade wrote to respondent to tell him the transcript was completed, ready for transmittal but that he was waiting for the deposit. There was no reply. Mr. Wade again wrote to respondent on October 22, 1979, advising him that the appeal had been stricken and that the transcript had been prepared since July. In November Mr. Wade submitted his bill to Charles Merit, the fiscal officer of the Supreme Bench of Baltimore City, and the bill was paid on December 5. It was after this that there was the chance meeting in January

when Mr. Wade advised respondent that he had filed the transcript in the clerk's office and had an extra copy in his office, which would cost respondent $150.00. In March respondent paid this sum to Mr. Wade and received his copy. Mr. Wade was never contacted by the Public Defender's office with respect to the appeal or the transcript.

On the day of Larry's sentencing respondent did not discuss with complainant any additional fee or cost. About three weeks later respondent called complainant on her job and told her that the transcript was ready and would cost $550.00. She told him that it would take her a couple of weeks to get the money together. In that conversation respondent also suggested to complainant that she might want to have the Public Defender's office handle the appeal. She said that she did not and wished to have respondent continue with it. On June 9 the $550.00 was paid by respondent to complainant by way of proceeds from an accident settlement handled by respondent's associate, Sheila Rubin.

After this date complainant continually called respondent at his office to see if the appellate brief had been filed but could not get through to him directly. She usually spoke to a secretary, Ann Hughes, who always assured her that everything was being taken care of. It was not until January of 1980 that complainant finally spoke to respondent and saw him at his office. Respondent assured her that the brief would be filed any day and that he would see Larry in the institution. He did neither.

For a few months after this meeting complainant heard nothing further from respondent but was finally able to speak to him on the telephone one night. Respondent apologized and said he had filed for a belated appeal, which was granted. Nothing further was done, and on May 22, 1981 complainant wrote to respondent discharging him from further representation and reminding him that she had paid him $550.00 for which no action was taken. On July 23, 1981, at the suggestion of the Public Defender's office, complainant wrote to respondent asking for return of the

$550.00. She then went to the Public Defender's office where eventually a belated appeal was able to be filed, resulting in a new trial granted to Larry. On October 5, 1981 respondent sent to complainant his check in the amount of $550.00, drawn on his escrow account.

At no time after Larry's sentencing did respondent ask for any sum other than the $550.00 and always represented to complainant that this was for appellate costs only. At no time did he ever suggest that there was to be an additional fee for the appeal, nor at any time did he suggest that the $1,750.00 fee was not to cover the appeal as well.

. Respondent acknowledges that he allowed Larry's appeal to be dismissed but said it was for tactical reasons and for further investigation and knew that he could get a belated appeal. He acknowledges that he did not tell complainant what he was doing in this regard. Respondent further acknowledges that from March, 1980 to the time of the receipt of complainant's letter of May 22, 1981, that he did nothing at all on the appeal.

Accordingly, this Court finds, by clear and convincing evidence, that respondent violated the following Disciplinary Rules of the Code of Professional Responsibility, Maryland Rule 1230, Appendix F, Annotated Code of Maryland:

Disciplinary Rule 1-102
'Misconduct.
(A) A lawyer shall not:
  (1) Violate a Disciplinary Rule.
  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
  (5) Engage in conduct that is prejudicial to the administration of justice.
  (6) Engage in any other conduct that adversely reflects on his fitness to practice law.'

Disciplinary Rule 2-110

'Withdrawal from Employment.

(A) In general.

    (3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

(B) Mandatory Withdrawal.

    A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:

    (2) He knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule.'

Disciplinary Rule 7-101

'Representing a Client Zealously.

(A) A lawyer shall not intentionally:

    (1) Fail to seek the lawful objectives of his client through reasonable available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101 (B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

    (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, or DR 5-105.

    (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102 (B).'

This Court does not find any clear and convincing evidence that respondent violated Disciplinary Rule 9-102 or Article 10, Section 44 of The Annotated Code of Maryland, as charged in the Petition for Disciplinary Action.

## II. The Dean Complaint

In 1973, in approximately the month of July, Ransom William Dean, complainant, retained respondent with respect to changing the names of the three children of his wife by a previous marriage. The children were Mary, Jennel and Tony Singletary. Respondent was to file a Petition for the Change of Names from the surname 'Singletary' to complainant's surname of 'Dean'. Although respondent has no independent recollection of his representation of complainant for this purpose, he acknowledges that he has an undated file with notes in his own handwriting which show that this request for representation was apparently made, although respondent believes that the request was not made until November of 1973. This Court finds that it was made earlier, as above indicated. It is clear from petitioner's Exhibit 17-D that respondent began his representation of complainant prior to September 16, 1973. This exhibit is one of respondent's own notes from his file where he lists the age of Jennel to be 11 and her date of birth as September 16, 1961.

Although complainant and his wife, Francina, disagreed in their testimony as to the precise amount of the fee to be paid to respondent, there was a fee agreed upon in the several hundred dollar range below the $500.00 level. Notwithstanding the fact that complainant was unable to produce any receipts, a substantial portion, if not all, of the fee was paid to respondent. It is clear from respondent's own file (Petitioner's Exhibit 17), that he did in fact undertake to represent complainant in this matter and prepared an appropriate Petition for change of Names. Complainant had several meetings with respondent in pursuance of this.

Respondent never did file any Petition for Change of Names, although he did prepare one and have Francina Dean sign the same under oath on December 5, 1973. On November 13, 1973 respondent wrote to the principals of Garrison Junior High School and Carver Vocational Technical High School, advising the principals that he represented Mr. and Mrs. Dean in the matter of changing the names of Jennel Singletary and Mary Frances Singletary, respectively, and that 'the process is presently pending before the Circuit Court No. 2 of Baltimore City and should be completed in several months.' These representations by respondent, i.e., that 'the process is presently pending before the Circuit Court No. 2' were false and untrue. In his testimony respondent acknowledges this fact and testified that this language was of some concern to him but that he had to say this in order to get some action. On cross examination he testified, 'no doubt I stretched the meaning of "pending" '.

Believing that respondent had consummated the legal work for which he had been retained, complainant's step-children, Mary, Jennel and Tony, used the surname of 'Dean' on social security records, school records, drivers licenses, bank records and tax records. At the present time Mary is 26 years of age, Jennel 21 and Tony 15.

It was not until August, 1981 that complainant and his wife discovered that the change of names had never been effected. This discovery was made when it was necessary to enroll Tony in a special school, and complainant and his wife could not submit the necessary proof of Tony's change in name. They contacted respondent who acknowledged that an order had never been signed but that he would promptly have an order signed by a judge. This was never done. The failure to consummate this matter has resulted in serious problems, complications and inconvenience to the complainant, his wife and the three children.

This Court finds, by clear and convincing evidence, that under the law of this state respondent did undertake the representation of complainant and his wife in the matter of changing the names of the three minor children. *Crest*

*Investment Trust, Inc. et al. v. Comstock et ux.* 23 Md. App. 280; *Central Cab Company, Inc. v. Clarke,* 259 Md. 542.

Accordingly, this Court finds, by clear and convincing evidence, that respondent violated the following Disciplinary Rules of the Code of Professional Responsibility, Maryland Rule 1230, Appendix F, Annotated Code of Maryland:

Disciplinary Rule 1-102
'Misconduct.
(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.'

Disciplinary Rule 6-101
'Failing to Act Competently.
(A) A lawyer shall not:
(2) Handle a legal matter without preparation adequate in the circumstances.
(3) Neglect a legal matter entrusted to him.'

Disciplinary Rule 7-101
'Representing a Client Zealously.
(A) A lawyer shall not intentionally:
(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101 (B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics,

or by treating with courtesy and con-
sideration all persons involved in the legal
process.

(2) Fail to carry out a contract of employment
entered into with a client for professional
services, but he may withdraw as permitted
under DR 2-110, DR 5-102, and DR 5-105.

(3) Prejudice or damage his client during the
course of the professional relationship,
except as required under DR 7-102 (B).'

Disciplinary Rule 7-102

'Representing a Client Within the Bounds of the
Law.

(A) In his representation of a client, a lawyer shall
not:

(5) Knowingly make a false statement of law
or fact.' "

Sherman did not except to any of Judge Hammerman's
findings. Bar Counsel has recommended that Sherman be
disbarred, pointing out that Judge Hammerman's findings
encompassed not only neglect, intentional failure to seek the
lawful objectives of his clients and prejudice, but also the
making of misrepresentations both to his clients and to
others. Bar Counsel also points out that Sherman presently
stands suspended from the practice of law for a period of
three years as a result of the neglect of a criminal matter and
a willful misrepresentation to the trial judge to conceal his
inaction. *See Attorney Griev. Comm'n v. Sherman,* 295 Md.
229, 454 A.2d 359 (1983).

Sherman argues that disbarment is an inappropriate
sanction for his misconduct in this case. He urges an addi-
tional suspension.

After carefully considering the matter, we accept the
findings of Judge Hammerman and conclude, in the circum-
stances, that disbarment is the appropriate sanction. In so
determining, we note that the time period involved in the
present case encompasses the same period of time which was

involved in the earlier disciplinary matter. We think it evident that Sherman's misconduct over a long period of time is reflective of an utter disregard for the interests of his clients and is further aggravated by the numerous misrepresentations made to his clients. We think Sherman's misconduct clearly demonstrates that he is unfit to continue as a member of the Bar of this State. *See Attorney Griev. Comm'n v. Stewart,* 285 Md. 251, 401 A.2d 1026 (1979); *Maryland St. Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975).

> *It is so ordered; respondent shall pay all costs as taxed by the Clerk of this Court, including the costs of all transcripts, pursuant to Maryland Rule BV15 c for which sum judgment is entered in favor of the Attorney Grievance Commission against Robert Stephen Sherman.*