507 A.2d 625

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## William Edward GALLAGHER, Jr.

Misc. Docket (Subtitle BV),
No. 17, Sept. Term, 1985.

Court of Appeals of Maryland.

May 2, 1986.

Melvin Hirshman, Bar Counsel, Annapolis for Atty. Grievance Com'n of Maryland.

William Edward Gallagher, Jr., Rockville, pro se.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH, and McAULIFFE, JJ.

COUCH, Judge.

Acting on the direction of the Review Board pursuant to Maryland Rule BV 7, the Attorney Grievance Commission (Commission), through Bar Counsel, filed charges against the Respondent, William E. Gallagher, Jr., a member of the Maryland Bar since 1966.

The Respondent was charged by the Commission with violation of Disciplinary Rules 1–102(A)(1), (3), (4), (5), (6); 6–101(A)(1), (2), (3); 7–101(A)(1), (2), (3); and 9–102(A)(1), (2) and (B)(1), (2), (3), (4).[1]

---

1.  DR 1–102 Misconduct.
    (A) A lawyer shall not:
        (1) Violate a Disciplinary Rule.
        .        .        .        .
        (3) Engage in illegal conduct involving moral turpitude.
        (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
        (5) Engage in conduct that is prejudicial to the administration of justice.
        (6) Engage in any other conduct that adversely reflects on his fitness to practice law.
    DR 6–101 Failing to Act Competently.
    (A) A lawyer shall not:
        (1) Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.
        (2) Handle a legal matter without preparation adequate in the circumstances.
        (3) Neglect a legal matter entrusted to him.
    DR 7–101 Representing a Client Zealously.

Pursuant to Rule BV 9b, we transmitted the charges to Judge David L. Cahoon, Circuit Court for Montgomery County, for hearing. A hearing was held following which Judge Cahoon found as facts the following:

"Respondent, William E. Gallagher, Jr., age 46, was admitted as a member of the Bar of this Court on

---

(A) A lawyer shall not intentionally:
  (1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.
  (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
  (3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).
DR 9-102 Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
  (1) Funds reasonably sufficient to pay bank charges may be deposited therein.
  (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
  (1) Promptly notify a client of the receipt of his funds, securities, or other properties.
  (2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
  (3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
  (4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

December 9, 1966. He is also a member of the Bar of the District of Columbia. He maintains an office for the practice of law in Rockville, Maryland.

"On August 29, 1981, Joseph J. Peters passed away. Mr. Peters was a resident of Montgomery County and an accountant. Prior to the death of Joseph J. Peters, Respondent, had been a friend of the deceased and of the wife of the deceased. Respondent had represented both Mr. and Mrs. Peters in several legal matters. Respondent prepared the Last Will of Joseph J. Peters 22 days prior to the date of his death and was the nominated personal representative in that document. The Will was prepared from notes Mr. Peters had made on a prior Will, and notes that Respondent had made in a conference with Mr. Peters who was terminally ill. From an examination of these documents and the probated Will it appears that the changes involved adding three specific monetary bequests in the amount of $3,000.00 each, a bequest of a television set, and deleting a bequest to his sister, Mrs. Sadie E. Higgins, of securities and balances in a brokerage account with Merrill, Lynch, Pierce, Fenner and Smith, jointly held with that sister, who remained as the residuary legatee in the prior and the probated Wills.

"On September 1, 1981 a petition to admit the Last Will of Mr. Peters to probate and for letters testamentary was filed by the Respondent with the Office of the Register of Wills for Montgomery County. A list of interested persons was due to be filed on September 21, 1981 and was filed with the petition, with a second list being filed thereafter on October 29, 1981, which appears to be a list of the same named persons.

"An inventory of assets due on December 1, 1981 was not timely filed resulting in notices to Respondent from the Register of Wills of Montgomery County and finally the issuance of a show cause order on April 13, 1982. This resulted in Respondent filing an inventory on May 6,

1982 but only a partial one. A year later a final inventory was filed which reflected only the addition of small items such as an automobile and a television set with no adequate explanation presented herein for such a delay.

"A first account was due on June 10, 1982, nine months after Respondent qualified as personal representative. Respondent had received from the Register of Wills notice when that account would be due; that letter being sent on April 29, 1982. A letter was sent to Respondent about the overdue account from the Register of Wills on July 8, 1982 and Respondent thereafter sought an extension of time. An extension was granted to September 1, 1982. Thereafter on September 23, 1982, the Register of Wills notified Respondent by letter that his account was again overdue beyond the period of time for which an extension had been granted. A show cause order was then issued in October, 1982, setting a hearing for December, 1982. That hearing was continued to January 19, 1983 and was not held because on January 18, 1983 Respondent filed the first account.

"In February, 1983 the auditor for the Register of Wills Office requested supporting documentation from the Respondent with respect to four matters in the account for which there was insufficient documentation. The request was to furnish it by March 11, 1983. A follow-up request was also necessary. On May 5, 1983 a final account was filed being in fact a restated first and final account. On May 31, 1983 an amended final account and petition for commission was filed. In June, 1983 the Register of Wills requested further documentation and information from Respondent. That resulted in further inaction by the Respondent, necessitating a third show cause order in July, 1983 setting a hearing for September, 1983.

"In August, 1983 an amended first and final account was approved by the court. This was accomplished after

the Respondent had procured a consent from the residuary legatee to the probate through the estate of the assets in the Merrill Lynch brokerage account in which she was the joint owner.  Despite the approval of the final account the Respondent continued to administer the estate.

"The bulk of the estate consisted of securities jointly held in the name of the decedent and his sister, Sadie Higgins.  The documents in evidence clearly show that the account had been denominated as a joint account with the right of survivorship.  Respondent contends that the jointly held securities were so titled by the decedent for convenience only and that the assets were required to be probated in the estate of the decedent.  After extensive review of all of the exhibits and Respondent's files I am unable to find any documentation of this circumstance.  This condition is inconsistent with the revisions made in the two Wills.  In the first Will the decedent expressly bequeathed the interest to his sister.  In the final Will there is no such bequest and she remains as a residuary legatee.  The conclusion about the status of the account was arrived at unilaterally by the Respondent and there is no evidence of record that he forthrightly advised the residuary legatee that he was proceeding contrary to the clear indicia of the title to the account and that she ought to obtain advice to protect her interests.  Neither did he submit the issue, with notice to all legatees, for any ruling by the Orphans' Court.  His conduct significantly enlarged the probate estate, permitting him to request and obtain a substantial commission related to, and justified by the size of the estate.

"The account of Respondent in May, 1983, and subsequently in August, 1983, failed to account for income received by the estate subsequent to December 31, 1982.  Respondent's accounting failed to account for sales of securities which would indicate their value as of the date of decedent's death, and whether there was a gain or loss

in the sale of the securities, and why they were not distributed in kind.

"Respondent received approximately $7,500.00 in life insurance proceeds. This represented policies payable to decedent's wife, who had predeceased him. The proceeds were therefore payable to the decedent's estate. Respondent deposited these funds in the estate account, but failed to include them in his accounting to the court in May, 1983. Respondent classified this as an 'oversight on his part.'

"Respondent disputed payment of a legacy of $3,000.00 to Blanche King, a nurse, who had cared for the decedent during the final months of his life. Respondent did not, however, take any action to litigate the matter or otherwise resolve it before attempting to file a final account. He asserted only that he had obtained a settlement with an attorney who was later discharged by the legatee. As to another $3,000.00 legacy, he retained funds for two years before making disbursement after the legatee had died and without determining the proper personal representative.

"Respondent prepared fiduciary income tax returns for tax due by the estate to the United States Government. In doing so, he failed to pay the taxes due on time. He incompetently used different taxable years in that the end of one tax year did not coincide with the beginning of the next tax year.

"Each of his accountings were deficient in one or more matters; he failed to supply supporting vouchers and other documentation requested by the Register of Wills. He did not supply timely appraisal figures for items of personalty. His failure to supply supporting vouchers and other documentation resulted in significant delays in the approval of the account. For a second time, in 1985, he has obtained a final approved account. However, evidence adduced at the proceedings indicate that he is continuing to have funds on hand belonging to the estate.

"After having taken possession of the assets in the jointly held account with Merrill, Lynch and after sale of the securities, in April, 1983 he was in possession of a sum in excess of $120,000.00 due to Sadie Higgins, the decedent's elderly sister. He disbursed to her only the sum of $50,000.00 in December, 1983 and continued to hold a balance until July, 1984, when he disbursed to her another $70,000.00. The funds retained by the Respondent were not placed in an interest bearing account. He failed to comply with continuing requests by Mrs. Higgins and others on her behalf to make a prompt disbursement of funds due or explain the reason why disbursement could not be made.

"Respondent failed to keep records of telephone calls he had concerning his handling of this estate matter and he did not keep or make written communications with the legatee, Sadie Higgins, concerning his delay and any reasons for the delay. His three files for the holding of papers relating to this estate were introduced into evidence and were in a state of disarray.

"Respondent's explanation for the several omissions and delays in the handling of this estate relates to the time pressures and demands of attempting to maintain a sole practitioner's practice of the law. He also asserts that he had great difficulty in addressing the problems of this estate because of a mental block which occurred as a result of handling a matter for the decedent who had been a longtime friend and client. No excuses presented for specific omissions or delays are convincing rebuttal to a conclusion of a pervasive incompetence and lack of diligence in the handling of a simple estate."

Thereafter, the trial judge found as his Conclusions of Law that the Respondent had violated Disciplinary Rules 1–102(A)(1)(4)(5)(6); 6–101(A)(1)(2)(3); 7–101(A)(1)(3) and 9–102(B)(1)(3)(4).[2]

---

**2.** *See* note 1 and accompanying text.

Neither the Commission nor the Respondent has taken exception to the Findings of Fact and Conclusions of Law of the trial judge. We have made, as we must, an independent review of the record and are unable to say that Judge Cahoon's conclusion was clearly erroneous. *Attorney Griev. Comm'n v. Myers*, 302 Md. 571, 578, 490 A.2d 231, 234 (1985); *Attorney Griev. Comm'n v. Miller*, 301 Md. 592, 602, 483 A.2d 1281, 1287 (1984).

There remains only the matter of an appropriate sanction. Respondent has been found in violation of certain Disciplinary Rules, mainly concerned with neglect. The Commission believes that the misconduct in this case is sufficiently serious to warrant a recommendation of disbarment. Respondent suggests that a reprimand would be appropriate. Though we conclude the facts of this case warrant a recommendation of a sanction greater in severity than a reprimand, we are of the opinion that the Commission's recommendation of disbarment is excessive.

In imposing a sanction upon Gallagher, we are mindful of our responsibility to the public. In times past, we have stated that the purpose of a disciplinary proceeding is to protect the public rather than to punish an erring attorney. *Attorney Griev. Comm'n v. Montgomery*, 296 Md. 113, 119, 460 A.2d 597 (1983); *Myers*, 302 Md. at 580, 490 A.2d 231; *Attorney Griev. Comm'n v. Velasquez*, 301 Md. 450, 459, 483 A.2d 354, 359 (1984) (and cases cited therein). Moreover, this Court has consistently regarded neglect and inattentiveness to a client's interests to be a violation of the Canons of Ethics warranting the imposition of some disciplinary sanction. *See, e.g., Attorney Griev. Comm'n v. Finnesey*, 283 Md. 541, 547, 391 A.2d 434 (1978); *Attorney Griev. Comm'n v. Pollack*, 279 Md. 225, 237, 369 A.2d 61 (1977). Respondent's failure to properly address the problems of the estate and his misconduct in negligently administering the estate persuade us that a suspension is more appropriate than a reprimand.

It is well settled that "[t]he severity of the sanction to be imposed is dependent on the facts and circumstances of each case [,]" and that facts of mitigation may be taken into consideration. *Pollack,* 279 Md. at 238, 369 A.2d at 68. *See also Attorney Griev. Comm'n v. Singleton,* 305 Md. 259, 267–68, 503 A.2d 714, 719 (1986) (and cases cited therein). In the present case, Gallagher's neglect of the administration of the Peters' estate was continuous over several years and his misconduct, *inter alia,* ultimately prejudiced the right of at least one legatee under the will from receiving her monetary bequest. At the time of the hearing before this Court, the estate had yet to be closed. At the hearing before us, Gallagher candidly admitted that "a lot of the workings of the administration of the estate were sloppy—they were extremely undiligent."

After carefully considering the matter, we conclude that the appropriate sanction to be imposed is suspension from the practice of law in this State for forty-five days beginning thirty days after the filing of the opinion in this case. The suspension shall continue thereafter until all costs in this case have been paid. In so holding, we wish to make clear that our action here should in no respect be viewed as an indication that neglect of a client's affairs, no matter how gross, will never lead to disbarment. *Attorney Griev. Comm'n v. Sinclair,* 302 Md. 581, 591, 490 A.2d 236 (1985). *See Maryland St. Bar Ass'n v. Phoebus,* 276 Md. 353, 347 A.2d 556 (1975).

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COST OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WILLIAM E. GALLAGHER, JR.