569 A.2d 1250

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Philip Hayden MANNING.**

**Misc. (Subtitle BV) No. 7, Sept. Term, 1989.**

Court of Appeals of Maryland.

Feb. 27, 1990.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Asst. Bar Counsel for the Attorney Grievance Com'n of Maryland, for petitioner.

No argument on behalf of respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE and ADKINS, JJ., and CHARLES E. ORTH, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

COLE, Judge.

Philip Manning is before us for the second time charged with violation of various disciplinary rules. The first occasion involved four charges of neglect which we resolved on January 19, 1990, by imposing a sanction of indefinite suspension with the right to apply for reinstatement within 90 days.

This second Petition for Disciplinary Action also concerns four charges of neglect which the Attorney Grievance Com-

mission investigated. We referred this matter to the Honorable Howard S. Chasanow, then of the Circuit Court for Prince George's County, (who also conducted the proceeding for the first charges) for findings of facts and conclusions of law.

We set forth those findings and conclusions as follows:

## FINDINGS OF FACT

In September, 1985, Elizabeth Caulkins retained the Respondent to represent her in securing a divorce. In June, 1987, testimony was taken before a judge to support an uncontested divorce in Ms. Caulkins' case. After the hearing, the judge instructed the Respondent to prepare and file a Second Amended Complaint on Ms. Caulkins' behalf so that the pleadings would reflect the resolution of all contested issues.

The Respondent prepared and had Ms. Caulkins execute the Second Amended Complaint, but he never filed it. After June, 1987, Ms. Caulkins made numerous telephone calls to Respondent's office, but Respondent failed to keep Ms. Caulkins apprised of the status of her case and also failed to take reasonable efforts to finalize the divorce.

Ms. Caulkins terminated the Respondent's representation on or about August 9, 1988, and she retained and paid other counsel to represent her. Ms. Caulkins' husband eventually obtained a divorce by default on his countercomplaint on or about September 24, 1988. The Respondent knowingly failed to respond to Bar Counsel's request for information in connection with Ms. Caulkins' complaint.

In January, 1986, Juliette B. Flora retained the Respondent to represent her in connection with claims arising out of injuries she sustained in a slip and fall accident which occurred in the laundry room of her apartment house in August, 1985. The Respondent did not communicate with the management, the owner(s) of the apart-

ment house, or the insurance carrier for the apartment house about Ms. Flora's claim or his representation of her. The Respondent failed to secure any information from the medical care providers who examined or treated Ms. Flora for her injuries. The Respondent did write to Dr. William R. Leahy on April 2, 1988, enclosing a fee of $25.00 for the preparation of a medical report, but the Respondent never followed up, and he never received a medical report from Dr. Leahy.

The Respondent substantially failed to communicate with Ms. Flora about her case, and she terminated his representation on May 25, 1988. The Respondent knowingly failed to respond to Bar Counsel's request for information in connection with Ms. Flora's complaint.

In March, 1988, Linda C. Kean and her husband, James R. Kean, retained the Respondent to re-draw their Wills, which several years before had been drafted by Respondent, but had been lost by the Keans. The Keans paid the Respondent $72.00 for redrawing their wills. On March 21, 1988, the Keans executed their wills in the Respondent's office, and the Respondent indicated that he would deposit the wills with the Register of Wills for Howard County and that he would send the Keans copies of their executed wills.

In May, 1988 the Respondent falsely represented to Ms. Kean that the wills had been deposited, and he assured her that he would send her copies of the wills. The Respondent failed to deposit the wills and failed to send copies of the executed wills to the Keans.

After May, 1988, the Respondent failed to communicate with the Keans, and failed to reply to letters or return numerous telephone calls directed to the Respondent's office by Ms. Kean. In October, 1988, the Keans retained and paid another attorney to redraft the wills. The Respondent failed to respond to Bar Counsel's requests for information in connection with Ms. Kean's complaint.

In May, 1988, Bruce P. MacDonald retained the Respondent to incorporate a business in Maryland. The Respon-

dent was paid a fee of $250.00, and he promptly prepared Articles of Incorporation, which were duly executed. A delay of ten (10) weeks ensued before the Articles of Incorporation were accepted by the Maryland State Department of Assessments and Taxation, due primarily to the Respondent's insistence that a post office box would suffice as a corporate and/or resident agent address. The Respondent failed to request State and Federal tax identification numbers on behalf of Mr. MacDonald despite his agreement to do so, and he failed to supply Mr. MacDonald with a copy of the approved Articles of Incorporation despite his agreement to do so. The Respondent also failed to communicate with Mr. MacDonald despite Mr. MacDonald's numerous attempts to reach the Respondent. The Respondent knowingly failed to respond to Bar Counsel's requests for information in connection with Mr. MacDonald's complaint.

## CONCLUSIONS OF LAW

The Respondent violated Rules 1.3 and 1.4 of the Rules of Professional Conduct in his representation of Elizabeth A. Caulkins. The Respondent's failure to file a Second Amended Complaint and make reasonable efforts to finalize Ms. Caulkins' divorce during the year following the uncontested divorce hearing violated Rule 1.3. The Respondent's failure to communicate with Ms. Caulkins on the status of her case or to return her numerous telephone calls after June, 1987 violated Rule 1.4.

During the Respondent's representation of Juliette B. Flora he consistently failed to take substantive action to pursue her claim. The Respondent's failure to inform the owner, management, or the insurance carrier of the claim at any time prior to January 1, 1987, demonstrated violations of DR 6–101(A)(3) and DR 7–101(A)(1), (2), (3) of the Code of Professional Responsibility. The Respondent's continued failure to communicate with any of the parties that may be liable for Ms. Flora's injuries, and the Respondent's failure to keep Ms. Flora reasonably informed

subsequent to January 1, 1987 demonstrated the Respondent's violations of Rules 1.3 and 1.4 of the Rules of Professional Conduct.

The Respondent violated Rules 1.3, 1.4, and 8.4(c) in connection with the Keans' wills. The Respondent violated Rule 8.4(c) of the Rules of Professional Conduct when he falsely represented to Ms. Kean that the wills had been deposited with the Register of Wills. The Respondent's failure to deposit the wills, and his failure to send the Keans copies of their executed wills despite his representation that he would do so, shows a lack of reasonable diligence and promptness on the part of the Respondent in violation of Rule 1.3. After May, 1988, the Respondent's continued failure to communicate with the Keans violated Rule 1.4(a).

The Respondent violated 1.3 and 1.4 of the Rules of Professional Conduct in connection with his representation of Bruce P. MacDonald. The delay in the acceptance of Mr. MacDonald's Articles of Incorporation, the Respondent's failure to request State and Federal tax identification numbers on behalf of Mr. MacDonald, and the Respondent's failure to supply Mr. MacDonald with a copy of the approved Articles of Incorporation demonstrate a lack of diligence on the Respondent's part in violation of Rule 1.3. The Respondent's failure to communicate with Mr. MacDonald despite his client's numerous attempts to reach the Respondent constitutes a violation of Rule 1.4(a).

In each of the above complaints, the Respondent knowingly failed to respond to Bar Counsel's requests for information, and in each of these matters, he therefore violated Rule 8.1(b) of the Rules of Professional Conduct. When the Respondent violated Disciplinary Rules prior to January 1, 1987, he thereby also violated DR 1–102(A)(1) of the Code of Professional Responsibility. When he violated the previously indicated Rules of Professional Conduct, he thereby also violated Rule 8.4(a) of those Rules.

Respondent has filed no exceptions to these findings and conclusions. Bar Counsel has recommended that the Respondent be disbarred.

In determining the proper course to follow when confronted with an attorney who has neglected the needs of his clients and failed to communicate with them, we have "consistently regarded neglect and inattentiveness to a client's interests to be a violation of the Canons of Ethics warranting the imposition of some disciplinary sanction." *Attorney Grievance Commission v. Gallagher,* 306 Md. 107, 115, 507 A.2d 625, 629 (1986); *Attorney Grievance Commission v. Finnesey,* 283 Md. 541, 547, 391 A.2d 434, 436 (1978); *Attorney Grievance Commission v. Pollack,* 279 Md. 225, 237, 369 A.2d 61, 68 (1977). Nonetheless, the ultimate goal of disciplinary proceedings is "to protect the public, rather than to punish an erring attorney." *Gallagher,* 306 Md. at 115, 507 A.2d at 629; *Attorney Grievance Commission v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Grievance Commission v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983).

In *Gallagher* we determined that the proper sanction for the neglect evidenced in that case was a forty-five day suspension. We pointed out, however, that our "action . . . should in no respect be viewed as an indication that the neglect of clients' affairs, no matter how gross, [would] never lead to disbarment." *Gallagher,* 306 Md. at 116, 507 A.2d at 629.

In *Attorney Grievance Commission v. Sinclair,* 305 Md. 430, 505 A.2d 106 (1986), the attorney negligently failed to pursue his client's interests and failed to communicate with his client. The Court noted that these violations had occurred in the same time period in which other similar violations had occurred. The attorney had already been reprimanded for those violations, but since the current violations had occurred before the reprimand, this was not a situation where the attorney failed to heed the Court's warning. Nonetheless, the Court held that since the attorney had previously received a private reprimand from the

Review Board for neglect of clients' affairs, the Court had no alternative but to disbar him.

In *Attorney Grievance Commission v. Sherman,* 297 Md. 318, 465 A.2d 1161 (1983), the Court disbarred an attorney for neglect, intentional failure to seek the lawful objectives of his clients, and making misrepresentations to his clients and to others. The attorney already stood suspended at the time the Court had its hearing as the result of the neglect of a previous matter. The Court noted that the time periods for the two violations overlapped, and yet it concluded that the attorney's "utter disregard for the interests of his clients ... further aggravated by the numerous misrepresentations made to his clients," mandated disbarment. *Id.* at 328, 465 A.2d at 1166. This was so despite the fact that the attorney had committed all of the acts of neglect prior to any disciplinary proceedings being instituted against him.

▋ It is clear then that willful and flagrant neglect of a client's affairs is, in and of itself, the kind of misconduct by an attorney which can lead to disbarment. As is obvious, the nature and persistence of this kind of inattention may and does vary. Sometimes it is generated by an outside stimulus amounting to a physical or mental disability which upon proper treatment can be overcome. In such cases this Court has not been reluctant to impose indefinite suspension and to reinstate when the Court has been satisfied that the disability has been overcome or by other means removed.

▋ In recent years, however, we have noticed too many instances when lawyers have agreed to represent clients and accepted fees, in part or in whole, only to completely neglect these same legal problems, causing the same clients emotional distress, financial loss, or other varying kinds of inconvenience. More often than not, these situations have been exacerbated by the lack of respect and attention extended to the courts as evidenced by the failure to file timely pleadings or to make appearances as scheduled be-

fore the court to enable proceedings to be conducted. It seems to us that this kind of persistent conduct is evidence of a lawyer's disregard of his obligation.

The instant case is a clear example of such attitude. Respondent is presently under suspension for acts of neglect which occurred in the same time period as the instant complaints. Although the suspension he is presently serving could not have had a deterrent effect on the previously committed violations, the large number of similar complaints over a more than two-year span demonstrates a disturbing pattern.

Additionally, Respondent has shown the same disregard towards both of these proceedings as he has shown toward his clients. He has failed to respond to letters, notices, and Petitions for Disciplinary Action from Bar Counsel just as he failed to respond to communications from clients. Respondent also failed to appear at the two hearings before Judge Chasanow. He did appear before us in the prior proceedings. In the instant proceeding, he did not appear before this Court despite the fact that Bar Counsel indicated that he was seeking disbarment. His conduct demonstrates insensitivity to the seriousness of these charges. As we see it, disbarment is the proper sanction under all of these circumstances.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST PHILIP HAYDEN MANNING.