817 A.2d 205

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Mark Andrew FABER.

Misc. AG No. 21, Sept. Term, 2002.

Court of Appeals of Maryland.

Feb. 21, 2003.

Melvin Hirshman, Bar Counsel, for petitioner.

No argument on behalf of respondent, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

RAKER, J.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against Mark Andrew Faber, respondent, alleging violations of the Maryland Rules of Professional Conduct 1.1 (Competence),[1] 1.2 (Scope of representation),[2] 1.3 (Diligence),[3] 1.4 (Communication),[4] and 1.16 (Declining or terminating representation).[5] Pursuant to Maryland Rule 16–752(a), we re-

---

1. Maryland Rule 1.1 (Competence) provides as follows:

 "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

2. Maryland Rule 1.2 (Scope of representation) provides, in pertinent part, as follows:

 "(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify."

3. Maryland Rule 1.3 (Diligence) provides as follows:

 "A lawyer shall act with reasonable diligence and promptness in representing a client."

4. Maryland Rule 1.4 (Communication) provides as follows:

 "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

5. Maryland Rule 1.16 (Declining or terminating representation) provides, in pertinent part, as follows:

 "(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:
 "(1) the representation will result in violation of the Rules of Professional Conduct or other law;
 "(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or
 "(3) the lawyer is discharged.
 * * *

ferred the matter to Judge Kaye A. Allison of the Circuit Court for Baltimore City to make findings of fact and conclusions of law. Judge Allison concluded that respondent violated Rules 1.1, 1.2, 1.3, 1.4, and 1.16.

The Circuit Court entered an Order of Default against respondent. The facts, as found by Judge Allison, are as follows. Sterling H. Fletcher, an investigator with the Attorney Grievance Commission, attempted to serve respondent with the Petition for Disciplinary or Remedial Action on May 22 and May 28, 2002. He was unsuccessful. The Petition was also sent by certified mail to respondent's Maryland residence on June 4, 2002. On June 27, 2002, pursuant to Maryland Rule 16–753, Bar Counsel served the Treasurer of the Client Protection Fund with the Petition, the Writ of Summons, and a copy of the Order of this Court. The Treasurer of the Client Protection Fund, on July 1, 2002, sent copies of the documents via certified and regular mail to respondent's Maryland residence and office as listed with the Fund. When the envelopes returned unopened and unclaimed, the Treasurer sent the documents via certified and regular mail to the Las Vegas, Nevada post office box that appeared as the forwarding address on one of the previously returned envelopes. Respondent did not file a response to the charges against him.

On July 29, 2002, Bar Counsel filed a Motion for Order of Default, alleging that pursuant to Maryland Rule 2–613, an Order of Default be entered against respondent for failure to file a response to the charges. On August 2, 2002, the default order was entered by a Circuit Court judge not designated by this Court to hear this matter, and, as a result, the Circuit Court vacated the Order on August 7, 2002. The clerk sent notice of the Order of Default to respondent at each of his

---

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

three addresses. Thereafter, Judge Allison, the judge specially assigned to this matter, reentered the Order of Default on August 8, 2002, and the clerk again sent notice to respondent's three addresses, advising respondent that he could move to vacate the order within thirty days. On September 10, 2002, respondent filed an untimely Motion to Vacate Order of Default, which Judge Allison denied on October 3, 2002.

## I.

Judge Allison held an evidentiary hearing on September 23, 2002. Respondent did not appear. Bar Counsel represented the Attorney Grievance Commission. Sterling Fletcher, Attorney Grievance Commission Investigator, was called as a witness to testify to his attempts to serve respondent with pleadings in this case. He also testified to his investigation in the matter. Judge Allison made the following Findings of Fact and Conclusions of Law, by clear and convincing evidence.

"On February 11, 2001, Leon Reginald Haines paid $650.00 to the Respondent, Mark Andrew Faber, for a bankruptcy case. Mr. Haines is disabled and the Respondent met with Mr. Haines at his home. Mr. Haines advised the Attorney Grievance Commission on October 10, 2001, that since the time he retained Mr. Faber, Mr. Faber had failed to communicate with him by telephone or mail and ignored his pages and Mr. Faber was unaware of the progress of his legal matter. Mr. Haines further alleged that sometime in July 2001, his daughter spoke with Mr. Faber who advised that the filing of the bankruptcy had been delayed because the court had been closed due to a problem in the Harbor Street Tunnel incident. Finally, in August 2001, Mr. Faber communicated with Mr. Haines and subsequently met with him at which time Mr. Haines signed some additional documents provided to him by Mr. Faber. Additional communication between the Complainant's daughter and Mr. Faber took place in September and Mr. Faber at that time advised that the federal court had been closed because of the terrorist attacks in New York on

September 11, 2001. Investigation revealed that as of November 2001, no bankruptcy petition had been filed by the Respondent or Mr. Haines.

"Mr. Faber was obligated to either complete the matter for his client ·or withdraw as permitted by the Maryland Rules of Professional Conduct.

"The Court therefore finds that Mark Andrew Faber, the Respondent, in connection with the complaint of Leon Reginald Haines violated Maryland· Rules of Professional Conduct 1.1, 1.2, 1.3, 1.4 and 1.16 as set forth in the Petition for Disciplinary and Remedial Action.

"Tosha Lydia Griffith filed a complaint with the Attorney Grievance Commission on October 17, 2001, in which she alleged that she met with the Respondent, Mark Andrew Faber, on January 18, 2001 about a Chapter 7 bankruptcy proceeding. In February 2001, she paid Mr. Faber the sum of $325.00 and supplied him with a detailed and organized file of her bills. She alleged that Mr. Faber was to make sure that her wages were not garnished but despite that promise her wages were garnished for more than $800.00. Ms. Griffith alleged that Mr. Faber indicated he had filed a bankruptcy petition and the problem was with the court. On September 6, 2001, Ms. Griffith personally visited the Clerk's office for the Bankruptcy Court and was advised that her case had not been filed. Investigation revealed that on October 26, 2001, Ms. Griffith's bankruptcy had been filed, not by the Respondent, but by another attorney on her behalf.· Once again, in connection with this client, Mr. Faber failed to make reasonable efforts to conclude the client's legal matter including regular communication and failed to withdraw from representation as permitted by the Rules of Professional Conduct. The Court therefore finds that the Respondent violated the following Rules of Professional Conduct by a clear and convincing evidence standard: Rules 1.1, 1.2, 1.3, 1.4, and 1.16."

## II.

Respondent did not appear at the hearing before this Court. He did, however, file an exception with this Court alleging

that he was not served properly in these proceedings and that this lack of notice denied him due process. Respondent's exception is without merit.

Respondent maintains that he never was served with the charges against him, notice of the hearing, the orders of default, or the final order of the hearing court. He contends that the only documents he received were an order of the Circuit Court for Baltimore City vacating the Order of Default entered on August 2, 2002 and Bar Counsel's request to reinstate the Order of Default.

 By failing to appear before this Court, respondent presented no argument in support of his exception. "Failure to present argument in support of an exception is a sufficient basis on which to overrule the exception or, at least, not consider it." *Attorney Grievance Comm'n v. Barneys,* 370 Md. 566, 577, 805 A.2d 1040, 1046 (2002). Respondent also presented no evidence to support his claim that he was denied due process. An attorney in a disciplinary hearing must establish factual matters in defense of his or her position by a preponderance of the evidence. *See* Maryland Rule 16–759; *Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 254, 760 A.2d 1108, 1118 (2000). Respondent failed to carry his burden by not producing any evidence to support his exception. *See Fezell,* 361 Md. at 254, 760 A.2d at 1118.

 Judge Allison found that Bar Counsel and the court made repeated efforts to serve respondent with all documents pertinent to the proceedings, including the Petition for Disciplinary or Remedial Action, the Writ of Summons, the Order of the Court of Appeals, and the Motion for Default. Judge Allison detailed the investigator's attempts to serve respondent and Bar Counsel's service upon the Client Protection Fund Treasurer. In addition, respondent's inconsistent statements regarding the documents he had received indicate that he misrepresented the facts relating to service in this matter.[6]

---

6. In his Motion to Vacate Order of Default filed in the Circuit Court, respondent stated:

The hearing court's findings are prima facie correct and will not be disturbed unless they are shown to be clearly erroneous. *See Attorney Grievance Comm'n v. Culver,* 371 Md. 265, 273–74, 808 A.2d 1251, 1256 (2002). The record supports the hearing judge's findings regarding notice. Judge Allison's findings are not clearly erroneous, and we overrule respondent's exception.

### III.

We turn now to the appropriate sanction to be imposed. In so doing, we are mindful that the purpose of disciplinary proceedings is to protect the public rather than to punish the errant attorney. *See Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). The severity of the sanction imposed depends on the particular facts and circumstances of each case, including consideration of any mitigating factors or prior grievance history. *See Attorney Grievance Comm'n v. Angst,* 369 Md. 404, 416–18, 800 A.2d 747, 755 (2002).

Respondent has violated Rules 1.1, 1.2, 1.3, 1.4, and 1.16. Petitioner recommends that respondent be disbarred. Respondent represented in his pleading filed before this Court that he does not oppose any sanction to remove his name from the rolls of practicing attorneys. He states that he has closed his law office and has no intention of ever practicing law. He

---

"[T]he first time that I knew that such a proceeding had been commenced was when I received an order signed by the Honorable Judge Glynn vacating the Order of default previously entered, an order which I did not know existed. The next piece of mail that was received indicated that the Order had been reentered on August 8, 2002."

In his Exceptions and Recommendation filed in this Court, respondent stated:

"That at no time was I ever served with . . . anything else connected with this case with the exception of a copy of an Order signed by Judge Glynn of the Circuit Court for Baltimore City vacating the Order of Default, which I also did not know was entered. The next thing that I received was a copy of a pleading sent to yet another judge, obviously more friendly, asking to reinstate the Order of Default. I have never received the Order reinstating it."

"prays this Honorable Court issue an Order ... [a]llowing him to resign, or consent to a permanent removal from the practicing rolls, with the proviso that no article in the [*Baltimore Sun* or the *Jeffersonian* ] be placed."

This Court consistently has regarded neglect of client needs and failure to communicate with clients to be violations of the Rules of Professional Conduct warranting the imposition of some disciplinary sanction. *See Attorney Grievance Comm'n v. Manning,* 318 Md. 697, 703, 569 A.2d 1250, 1253 (1990) (citing *Attorney Grievance Comm'n v. Gallagher,* 306 Md. 107, 115, 507 A.2d 625, 629 (1986)). We previously have found disbarment to be appropriate when attorneys repeatedly neglect client affairs. *See Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 290, 293, 793 A.2d 535, 543, 545 (2002); *Manning,* 318 Md. at 705, 569 A.2d at 1254; *Attorney Grievance Comm'n v. Montgomery,* 318 Md. 154, 165–66, 567 A.2d 112, 117–18 (1989); *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 365–66, 347 A.2d 556, 562–63 (1975).

In *Attorney Grievance Comm'n v. Wallace,* this Court disbarred an attorney who, in light of six separate complaints against him, demonstrated a lack of diligence and a failure to communicate with his clients. 368 Md. at 278, 293, 793 A.2d at 536, 545. Wallace failed to perform work as promised. He did not respond to client requests for information or for the return of files and payments. Wallace had no prior disciplinary actions, but we nonetheless concluded that the "volume and severity" of the complaints against him and his "pattern" of misconduct called for disbarment. *Id.* at 293, 793 A.2d at 545. We stated:

> "[Wallace's] lack of diligence, his lack of preparation, his failure to communicate with his clients, his charging unreasonable fees, his failure to account for and return monies, his misrepresentations, and his failure to comply with Bar Counsel's requests all lead to the most severe sanction of disbarment."

*Id.,* 793 A.2d at 545.

In *Attorney Grievance Comm'n v. Manning,* this Court disbarred an attorney who neglected the needs of his clients,

failed to communicate with his clients, and who previously had been suspended for similar violations. 318 Md. at 699–705, 569 A.2d at 1251–54. We noted:

> "In recent years, however, we have noticed too many instances when lawyers have agreed to represent clients and accepted fees, in part or in whole, only to completely neglect these same legal problems, causing the same clients emotional distress, financial loss, or other varying kinds of inconvenience. More often than not, these situations have been exacerbated by the lack of respect and attention extended to the courts as evidenced by the failure to file timely pleadings or to make appearances as scheduled before the court to enable proceedings to be conducted. It seems to us that this kind of persistent conduct is evidence of a lawyer's disregard of his obligation."

*Id.* at 704–05, 569 A.2d at 1254. Manning's continual neglect of client matters, evidenced in part by his prior suspension on similar grounds, demonstrated a pattern warranting disbarment. *See id.* at 705, 569 A.2d at 1254.

Similarly, in *Maryland State Bar Ass'n v. Phoebus*, we held that disbarment was the appropriate sanction for an attorney who persistently neglected client matters and who previously had been disciplined for analogous misconduct. 276 Md. at 365–66, 347 A.2d at 562–63. We emphasized that

> "[b]ecause of the vital role an attorney, licensed to practice, plays in the legal process, he must act with competence and proper care in representing his clients. His admission to the Bar attests to the public that he has met the standards for admission and is competent to discharge his duties toward his clients with strictest fidelity. Once retained he must carefully safeguard the interests of his client, must be diligent in his representation of the client's interest, must give appropriate attention to his legal work, and must observe the utmost good faith in his professional relationship."

*Id.* at 361, 347 A.2d at 560–61. Phoebus' habitual neglect of client matters indicated that the prior sanctions had been

ineffective in curing his prior history of neglect. *See id.* at 365, 347 A.2d at 562–63. This Court disbarred Phoebus, stating that "to order otherwise ... would convey to the public, implicitly, a misrepresentation that the respondent continues to possess those basic attributes, required of all members of the bar, that they will act with proper care in representing their clients and will, with strictest fidelity, diligently attend their clients' interests." *Id.* at 366, 347 A.2d at 563.

■ Respondent's conduct exhibits a similar pattern of neglect. In the instant case, respondent failed to complete two bankruptcy cases. Following initial meetings with his clients, respondent did not remain in contact with them and did not keep them apprised of the status of their cases. Months passed during which respondent ignored attempts to contact him and made no progress on the matters under his care. In Ms. Griffith's case, respondent told her that he had filed her bankruptcy petition when, in fact, nothing had been filed; another attorney completed the filing. Respondent's conduct evidences an inexcusable pattern of neglect of client matters, failure to communicate with clients, and failure to terminate representation so as reasonably to protect client interests.

Furthermore, respondent presented little or no mitigating evidence to this Court. Although respondent alleges in his pleadings before this Court that he was under the care of a psychiatrist for a suicide attempt, he never presented any evidence before the hearing judge or this Court in support of this bald statement. In aggravation, respondent has a record of two prior disciplinary actions for lack of diligence. On August 31, 1999, respondent was suspended, by consent, for a period of thirty days for violating Rules 1.2, 1.3, 1.4, 1.7(b),[7]

---

7. Maryland Rule 1.7(b) (Conflict of interest) provides as follows:
 "(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

and 1.15[8] in connection with three client complaints. In April 2001, respondent received a public reprimand, by consent, for violating Rules 1.1, 1.2, 1.3, and 1.4 because he allowed a divorce case to languish for over four years while retaining the fee.

We hold that disbarment is the appropriate sanction. The name of Mark Andrew Faber will be stricken from the rolls of those authorized to practice law in this State.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(B), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MARK ANDREW FABER.*

---

"(1) the lawyer reasonably believes the representation will not be adversely affected; and
"(2) the client consents after consultation."

8. Maryland Rule 1.15 (Safekeeping property) provides as follows:
"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
"(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved."