793 A.2d 535

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Brian L. WALLACE.

Misc. AG No. 6, Sept. Term, 2001.

Court of Appeals of Maryland.

March 7, 2002.

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for the Attorney Grievance Commission of Maryland, for Petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

CATHELL, J.

On April 12, 2001, the Attorney Grievance Commission, petitioner, by Bar Counsel and Deputy Bar Counsel, filed a Petition for Disciplinary Action against Brian L. Wallace, respondent. The petition, based on six complaints filed against respondent, alleged that respondent had violated Maryland Rules of Professional Conduct (MRPC) 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(a) and (b), 1.16(a)(2) and (d), 3.2, 8.1(b), and 8.4(c) and (d).[1] Pursuant to Maryland Rule 16–752,[2] we

---

1. The relevant MRPC state:
    "**Rule 1.1. Competence.**
    A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.
    **Rule 1.3. Diligence.**
    A lawyer shall act with reasonable diligence and promptness in representing a client.
    **Rule 1.4. Communication.**
    (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
    (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
    **Rule 1.5. Fees.**
    (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
    (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
    (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
    (3) the fee customarily charged in the locality for similar legal services;
    (4) the amount involved and the results obtained;
    (5) the time limitations imposed by the client or by the circumstances;
    (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

**Rule 1.15.   Safekeeping property.**

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.   Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules.   Other property shall be identified as such and appropriately safeguarded.   Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person.   Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

**Rule 1.16.   Declining or terminating representation.**

(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

. . .

(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client. . . .

. . .

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned.   The lawyer may retain papers relating to the client to the extent permitted by other law.

**Rule 3.2.   Expediting litigation.**

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

**Rule 8.1.   Bar admission and disciplinary matters.**

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

. . .

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

**Rule 8.4.   Misconduct.**

transmitted the matter to Judge Nancy Davis–Loomis of the Circuit Court for Anne Arundel County for her to conduct a hearing and to make findings of fact and conclusions of law.

On July 31, 2001, an evidentiary hearing was held before the hearing judge. Neither respondent nor a representative of respondent appeared at the hearing. On October 4, 2001, Judge Davis–Loomis filed her Findings of Fact and Conclusions of Law. The record was then transferred from the hearing judge to our Court for oral argument.

## I. Facts

Respondent was admitted to the Bar of Maryland on December 8, 1987. The Petition for Disciplinary Action filed in this case was based on six complaints. Respondent was served with the Petition, Interrogatories, and a Request for Admission of Facts and Genuineness of Documents. Respondent failed to answer all three.[3] Respondent also did not

---

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice. . . ."

2. Maryland Rule 16–752 states, in relevant part:

"**Rule 16–752. Order designating judge.**
(a) **Order.** Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

3. Maryland Rule 16–754 states:

"**Rule 16–754. Answer.**
(a) **Timing; contents.** Within 15 days after being served with the petition, unless a different time is ordered, the respondent shall file with the designated clerk an answer to the petition and serve a copy on the petitioner. Sections (c) and (e) of Rule 2–323 apply to the answer. Defenses and objections to the petition, including insuffi-

ciency of service, shall be stated in the answer and not by preliminary motion.

> . . .
>
> (c) **Failure to answer.** If the time for filing an answer has expired and the respondent has failed to file an answer in accordance with section (a) of this Rule, the court shall treat the failure as a default and the provisions of Rule 2–613 shall apply."

Maryland Rule 2–613 provides for a default judgment to be entered by the court, which was done in this case by the hearing judge. Maryland Rule 2–323 provides the procedure for filing an answer to the petition. A failure to file an answer is covered in Maryland Rule 2–323(e), which states:

> **"Rule 2–323. Answer.**
>
> . . .
>
> (e) **Effect of failure to deny.** Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted unless denied in the responsive pleading or covered by a general denial. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided. When appropriate, a party may claim the inability to admit, deny, or explain an averment on the ground that to do so would tend to incriminate the party, and such statement shall not amount to an admission of the averment."

Respondent's failure to respond to petitioner's Request for Admission of Facts and Genuineness of Documents would also lead to facts and documents being admitted. Maryland Rule 2–424 states, in relevant part:

> **"Rule 2–424. Admission of facts and genuineness of documents.**
>
> . .
>
> (b) **Response.** Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney. As to each matter of which an admission is requested, the response shall specify an objection, or shall admit or deny the matter, or shall set forth in detail the reason why the respondent cannot truthfully admit or deny it. The reasons for any objection shall be stated. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and deny or qualify the remainder. A respondent may not give lack of information or knowledge as a reason for failure to admit or deny unless the respondent states that after reasonable inquiry the information known or readily obtainable by the respondent is insufficient to enable the respondent to admit or deny. A party who considers that a matter of which an admission is requested presents a genuine issue for trial may not, on that ground alone, object to the request but the party may, subject to the provisions of section (e) of this Rule, deny the matter or set forth reasons for not being able to admit or deny it."

appear for the evidentiary hearing before the hearing judge and for oral argument before this Court.

## BC Docket No. 2000–428–4–2

### Complaint of Herbert Miller, Esquire

Mr. Miller represented a client in a case involving a party being represented by respondent. Mr. Miller sent a letter to respondent with allegations that respondent, or respondent's client, was engaged in delaying tactics and deceitful conduct in an attempt to prejudice Mr. Miller's client. Respondent failed to respond to Mr. Miller's letter and also failed, on several occasions, to respond to petitioner's investigator about the allegation.

The hearing judge found by clear and convincing evidence that respondent's failure to respond to petitioner was a violation of MRPC 8.1(b).

## BC Docket No. 2001–132–4–2

### Complaint of Ida M. Oxford

Ms. Oxford was the personal representative of the estate of Ralph Clayton Smith, Jr., and she had retained respondent in February of 2000 as the estate's attorney. In the course of his representation of the estate, respondent, after already obtaining a time extension, failed to file a timely administration account or to seek a further time extension within which to submit the administration account. Respondent also failed to take any further substantive action with respect to the estate and to respond to Ms. Oxford's requests for information.

Ms. Oxford repeatedly tried to obtain her file from respondent and, despite his obligation to release the file, respondent failed to respond to Ms. Oxford's requests. It was not until after an Inquiry Panel hearing was held regarding Ms. Oxford's complaint that respondent released her file. Respondent also failed to respond to petitioner's requests for information concerning Ms. Oxford's complaint. At the inquiry panel hearing, respondent indicated that he was unable to properly

represent Ms. Oxford because he was suffering from personal and psychological problems.

The hearing judge found by clear and convincing evidence that respondent had violated MRPC 1.1, 1.3, 1.4(a) and (b), 1.16(a)(2) and (d), and 8.1(b). Specifically, she made the following findings in support of the violation: respondent did not have the legal knowledge or skill to represent Ms. Oxford, respondent did not exercise the requisite thoroughness or preparation in his representation, respondent failed to act with reasonable diligence in representing Ms. Oxford, respondent failed to keep Ms. Oxford informed about the status of her case or to reply to her phone calls and written correspondence, respondent failed to properly explain the proceedings in her case to Ms. Oxford in a manner that would allow her to make informed decisions about her case, respondent failed to withdraw from his representation when he realized that his personal problems were interfering with his ability to represent Ms. Oxford, respondent failed to reasonably attempt to protect Ms. Oxford's interests and to provide Ms. Oxford with her file when it was requested, and respondent failed to respond to inquiries from petitioner.

## BC Docket No. 2001–86–4–2

### Complaint of Jacqueline O. Uzzell

Ms. Uzzell was the personal representative of the estate of Mamie L. Gibson and she retained respondent at the end of 1997 as the estate's attorney. In February of 1998 Ms. Uzzell paid respondent $790.00 and in March of 1999 she paid him an additional $1,000.00. The only asset of the estate was a house with an appraised value of $49,000.00.

In the course of his representation of Ms. Uzzell, respondent failed to timely file appraisals, an inventory of the estate, and accountings. He also failed to respond to delinquency notices issued by the Register of Wills for Baltimore City. Respondent also made misrepresentations to Ms. Uzzell about the work he was allegedly completing on her case and, when he was not making misrepresentations, he failed to respond to

a majority of Ms. Uzzell's phone calls. Respondent failed to respond to petitioner's inquiries concerning Ms. Uzzell's complaint.

The hearing judge found by clear and convincing evidence that in the course of his representation of the estate respondent had violated MRPC 1.1, 1.3, 1.4(a) and (b), 8.1(b), and 8.4(c).[4] Specifically, she made the following findings in support of the violations: respondent did not have the legal knowledge to represent Ms. Uzzell, respondent did not exercise the proper preparation and thoroughness in the course of his representation, respondent failed to act with reasonable diligence as evidenced by the filing of delinquent notices by the Register of Wills for Baltimore City, respondent failed to keep Ms. Uzzell informed about the status of her case, respondent made misrepresentations to Ms. Uzzell about the status of her case, his misrepresentations and failure to adequately explain the status of her case left Ms. Uzzell unable to make informed decisions about her case, and respondent failed to respond when petitioner requested information about Ms. Uzzell's complaint.

### BC Docket No. 2001–133–4–2

### Complaint of Diane Kent

Ms. Kent hired respondent to represent her in an employment discrimination case. She paid the respondent $1,000.00; respondent stated that he placed these funds in his trust account. Respondent filed suit on behalf of Ms. Kent in the United States District Court for the District of Maryland. Prior to filing suit, respondent did not obtain any information about the case as he failed to make any contact with the defendant, its employees, agents, or attorneys.

---

4. We note that in the Petition for Disciplinary Action, petitioner stated that respondent had violated MRPC 8.4(c). In its Findings of Fact and Conclusions of Law, the hearing judge stated that petitioner had charged MRPC 8.4(d). Nevertheless, the hearing judge made a finding of fact and a conclusion of law to support a violation of MRPC 8.4(c). We agree with her finding of a violation of MRPC 8.4(c).

After filing the complaint respondent failed to take any substantive action on Ms. Kent's behalf. The defendant filed a Motion to Dismiss and respondent failed to file a response. The motion was granted and on February 17, 2000 Ms. Kent's case was dismissed with prejudice. Respondent failed to notify Ms. Kent that her case had been dismissed. She learned of the dismissal in April of 2000 when she personally reviewed her file at the courthouse. Respondent had not returned Ms. Kent's repeated telephone calls both before and after her case was dismissed.

In September of 2000 respondent promised to return $500.00 of his fee to Ms. Kent, but he failed to keep his promise. Respondent failed to account for the money he received from Ms. Kent and he was unable to determine how much of the $1,000.00 he received from Ms. Kent should be returned to her. This was caused by the respondent's failure to keep accurate time records with respect to his representation of Ms. Kent.

Respondent failed to respond to petitioner's requests for information concerning the complaint of Ms. Kent and he also failed to comply with a subpoena issued by the Inquiry Panel in its investigation of Ms. Kent's complaint.

The hearing judge found by clear and convincing evidence that respondent had violated MRPC 1.1, 1.3, 1.4(a) and (b), 1.15(a) and (b), and 8.1(b). Specifically, the hearing judge made the following findings in support of the violations: respondent does not have the legal knowledge required to represent a client in this type of case, respondent failed to exercise the requisite thoroughness and preparation in the course of his representation, respondent failed to act with reasonable diligence by not investigating the case and by his failure to respond to the Motion to Dismiss, respondent did not return repeated phone calls from Ms. Kent, respondent did not keep Ms. Kent adequately informed about the status of her case, respondent failed to advise Ms. Kent of the Motion to Dismiss so she could make an informed decision regarding the representation and her case, respondent failed to keep

accurate accounting records for the funds paid to him by Ms. Kent, respondent failed to keep adequate time records with respect to his representation of Ms. Kent, respondent failed to promptly return funds to Ms. Kent that she was entitled to receive, and respondent failed to respond to petitioner's request for information about Ms. Kent's complaint and failed to respond to a subpoena issued by the Inquiry Panel.

## BC Docket No. 2000–382–4–2

### Complaint of Leon Johnson

In November of 1998, Mr. Johnson retained respondent to represent him in a race discrimination action against Three Lower Counties Community Services, Inc. (TLCCS). Mr. Johnson paid respondent a fee of $2,000.00, which respondent deposited into his escrow account. In December of 1998 respondent transferred $1,000.00 of Mr. Johnson's payment from the escrow account as a fee.

Respondent filed suit on behalf of Mr. Johnson in the United States District Court for the District of Maryland on November 19, 1998. After filing suit, respondent failed to take any further action on Mr. Johnson's case, including failing to have TLCCS served with Mr. Johnson's complaint. In June of 1999, Mr. Johnson's case was dismissed for want of prosecution. Respondent did not inform Mr. Johnson that his case had been dismissed.

During the course of his representation, respondent failed to reply to Mr. Johnson's written requests for an update on his case and he also failed to provide Mr. Johnson with an accounting of the funds he had paid to respondent. Respondent also failed, despite Mr. Johnson's repeated requests, to refund any of the $2,000.00 that respondent had collected from Mr. Johnson.

On March 13, 2000, Mr. Johnson filed a complaint with petitioner. On the day of the Inquiry Panel hearing in this case, respondent informed Mr. Johnson that he had decided against pursuing Mr. Johnson's case because he felt the case had little or no merit. During petitioner's investigation of this

complaint, respondent failed to reply to petitioner's requests for information.

The hearing judge found by clear and convincing evidence that respondent had violated MRPC 1.1, 1.3, 1.4(a) and (b), 1.5(a), 1.15(b), 1.16(d), 3.2, and 8.1(b). Specifically, the hearing judge made the following findings in support of the violations: respondent did not have the legal knowledge or skill reasonably necessary to represent Mr. Johnson, respondent failed to act with the requisite thoroughness and preparation in the course of his representation, respondent failed to act with reasonable diligence in his pursuit of Mr. Johnson's claim, respondent failed to keep Mr. Johnson appraised of the status of his case, respondent failed to properly explain Mr. Johnson's case to him so that Mr. Johnson could make informed decisions about his case, respondent advised Mr. Johnson over two years after accepting his case that he thought Mr. Johnson's case had little or no merit, respondent did not charge a reasonable fee, he failed to provide Mr. Johnson with an accounting of his funds, respondent failed to provide Mr. Johnson with a refund, respondent failed to make reasonable efforts to expedite litigation consistent with Mr. Johnson's interests, and respondent failed to provide petitioner with information concerning this complaint.

## BC Docket No. 2000–515–4–2

### Complaint of Christopher Smoke

Mr. Smoke retained respondent to represent him in a personal injury case arising out of an incident on September 21, 1995, when Mr. Smoke sustained burn injuries at an Exxon service station. On September 21, 1998, respondent filed suit in the Circuit Court for Prince George's County against Exxon Corporation and Calverton Exxon. Exxon Corporation filed a Motion for Production of Documents, which respondent failed to respond to and which failure resulted in the claim against Exxon Corporation being dismissed. The other defendant was an entity that had no legal existence. Respondent's failure to correct this mistake and obtain service on the second

defendant in a correct name resulted in the claim against the second defendant also being dismissed on October 26, 1999.

Throughout his representation of Mr. Smoke, respondent failed to communicate with Mr. Smoke as to the status of his claim and respondent also failed to inform Mr. Smoke that the claim had been dismissed. Respondent also failed to respond to petitioner's inquiries about this complaint.

The hearing judge found by clear and convincing evidence that respondent had violated MRPC 1.1, 1.3, 1.4(a) and (b), 3.2, 8.1(b), and 8.4(d). Specifically, the hearing judge made the following findings in support of the violations: respondent did not have the legal knowledge or skill to handle Mr. Smoke's claim, respondent did not exercise the requisite thoroughness and preparation in his handling of the claim, respondent failed to exercise reasonable diligence in responding to Exxon Corporation's Motion for Production of Documents and correcting the co-defendants name and obtaining service of process, respondent failed to keep Mr. Smoke reasonably informed about the status of his case, respondent's failure to communicate with Mr. Smoke did not allow Mr. Smoke to make informed decisions about respondent's representation, respondent did not make reasonable efforts to expedite litigation consistent with Mr. Smoke's interests, respondent failed to answer a lawful demand for information from a disciplinary authority, respondent failed to appear at a hearing of a disciplinary authority, and respondent engaged in conduct that is prejudicial to the administration of justice.

## II. Discussion

Respondent filed no exceptions to the hearing judge's findings of fact or conclusions of law. The "hearing court's findings of fact are *prima facie* correct and will not be disturbed unless they are shown to be clearly erroneous." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997) (citing *Attorney Grievance Comm'n v. Goldsborough,* 330 Md. 342, 347, 624 A.2d 503, 505 (1993)). After a review of the record, we hold that the findings of fact of the hearing judge are not clearly erroneous. We hold that

the hearing judge's conclusions of law are supported by the facts.

We examined the purpose behind the attorney grievance procedure and the appropriate sanction for an attorney in *Attorney Grievance Commission v. Franz,* 355 Md. 752, 760–61, 736 A.2d 339, 343–44 (1999), when we stated:

"It is well-settled that the purpose of disciplinary proceedings is to protect the public rather than to punish the erring attorney. *Attorney Grievance Comm'n of Maryland v. Myers,* 333 Md. 440, 446–47, 635 A.2d 1315, 1318 (1994); *Attorney Griev. Comm'n v. Goldsborough,* 330 Md. 342, 364, 624 A.2d 503, 513 [ (1993) ]; *Attorney Griev. Comm'n v. Protokowicz,* 329 Md. 252, 262–63, 619 A.2d 100, 105 (1993); *Attorney Griev. Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Griev. Comm'n v. Velasquez,* 301 Md. 450, 459, 483 A.2d 354, 359 (1984); *Attorney Griev. Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983). The public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated. *Attorney Griev. Comm'n v. Kerpelman,* 288 Md. 341, 382, 420 A.2d 940, 959 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981). By imposing such a sanction, this Court fulfills its responsibility 'to insist upon the maintenance of the integrity of the Bar and to prevent the transgression of an individual lawyer from bringing its image into disrepute.' *Maryland St. Bar Ass'n v. Agnew,* 271 Md. 543, 549, 318 A.2d 811, 814 (1974). Therefore, the public interest is served when sanctions designed to effect general and specific deterrence are imposed on an attorney who violates the disciplinary rules. *See Protokowicz,* 329 Md. at 262–63, 619 A.2d at 105; *Attorney Griev. Comm'n v. Owrutsky,* 322 Md. 334, 355, 587 A.2d 511, 521 (1991); *Attorney Griev. Comm'n v. Alison,* 317 Md. 523, 540–41, 565 A.2d 660, 668 (1989). Of course, what the appropriate sanction for the particular misconduct is, in the public interest, generally depends upon the facts and circumstances of the case. *Attorney Griev. Comm'n v. Babbitt,*

300 Md. 637, 642, 479 A.2d 1372, 1375 (1984) (the facts and circumstances of a case will determine how severe the sanction should be); *Montgomery*, 296 Md. at 120, 460 A.2d at 600; *Attorney Griev. Comm'n v. Pollack*, 289 Md. 603, 609, 425 A.2d 1352, 1355 (1981). The attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975)."

Petitioner contends that the appropriate sanction in the case *sub judice* is for respondent to be disbarred. Petitioner states that respondent's actions were marked by a total lack of diligence and an indifference to his legal obligations. Respondent failed to return monies that his clients were entitled to receive. In every case, respondent refused to cooperate with Bar Counsel. Petitioner states that the cumulative effect of the six complaints, combined with the severity of the violations in those complaints, result in the appropriate sanction being disbarment.

We have disbarred attorneys for neglecting their clients and ignoring Bar Counsel when the attorney had already received a previous reprimand or suspension. *See Attorney Grievance Comm'n v. Singleton*, 315 Md. 1, 553 A.2d 222 (1989); *Attorney Grievance Comm'n v. Sinclair*, 305 Md. 430, 505 A.2d 106 (1986); *Attorney Grievance Comm'n v. Stewart*, 285 Md. 251, 401 A.2d 1026 (1979); *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 347 A.2d 556 (1975). We have also held that neglectful conduct, without receiving a previous sanction to serve as a warning, can result in disbarment. In *Attorney Grievance Commission v. Manning*, 318 Md. 697, 569 A.2d 1250 (1990), we held that disbarment was the appropriate sanction for an attorney who had neglected his clients' cases, had failed to communicate with his clients, and failed to cooperate in the disciplinary proceedings. In a previous proceding that included four complaints of neglect, Philip Manning had received an indefinite suspension with the right to apply for reinstatement within ninety days. The second proceeding also involved four complaints that occurred at the

same time as the previous complaints. In reviewing the appropriate sanction for the second proceeding, we stated:

"In determining the proper course to follow when confronted with an attorney who has neglected the needs of his clients and failed to communicate with them, we have 'consistently regarded neglect and inattentiveness to a client's interests to be a violation of the Canons of Ethics warranting the imposition of some disciplinary sanction.' *Attorney Grievance Commission v. Gallagher,* 306 Md. 107, 115, 507 A.2d 625, 629 (1986); *Attorney Grievance Commission v. Finnesey,* 283 Md. 541, 547, 391 A.2d 434, 436 (1978); *Attorney Grievance Commission v. Pollack,* 279 Md. 225, 237, 369 A.2d 61, 68 (1977)....

"In *Gallagher* we determined that the proper sanction for the neglect evidenced in that case was a forty-five day suspension. We pointed out, however, that our 'action ... should in no respect be viewed as an indication that the neglect of clients' affairs, no matter how gross, [would] never lead to disbarment.' *Gallagher,* 306 Md. at 116, 507 A.2d at 629.

. . .

"It is clear then that willful and flagrant neglect of a client's affairs is, in and of itself, the kind of misconduct by an attorney which can lead to disbarment. As is obvious, the nature and persistence of this kind of inattention may and does vary....

"In recent years, however, we have noticed too many instances when lawyers have agreed to represent clients and accepted fees, in part or in whole, only to completely neglect these same legal problems, causing the same clients emotional distress, financial loss, or other varying kinds of inconvenience. More often than not, these situations have been exacerbated by the lack of respect and attention extended to the courts as evidenced by the failure to file timely pleadings or to make appearances as scheduled before the court to enable proceedings to be conducted. It

seems to us that this kind of persistent conduct is evidence of a lawyer's disregard of his obligation.

"The instant case is a clear example of such attitude. Respondent is presently under suspension for acts of neglect which occurred in the same time period as the instant complaints. Although the suspension he is presently serving could not have had a deterrent effect on the previously committed violations, the large number of similar complaints over a more than two-year span demonstrates a disturbing pattern.

"Additionally, Respondent has shown the same disregard towards both of these proceedings as he has shown toward his clients. He has failed to respond to letters, notices, and Petitions for Disciplinary Action from Bar Counsel just as he failed to respond to communications from clients. Respondent also failed to appear at the two hearings before Judge Chasanow. He did appear before us in the prior proceedings. In the instant proceeding, he did not appear before this Court despite the fact that Bar Counsel indicated that he was seeking disbarment. His conduct demonstrates insensitivity to the seriousness of these charges. As we see it, disbarment is the proper sanction under all of these circumstances."

*Id.* at 703–05, 569 A.2d at 1253–54 (alteration in original).

In *Attorney Grievance Commission v. Sherman,* 297 Md. 318, 465 A.2d 1161 (1983), we accepted the findings of the hearing judge, which found that Sherman's conduct "encompassed not only neglect, intentional failure to seek the lawful objectives of his clients and prejudice, but also the making of misrepresentations both to his clients and to others." *Id.* at 327, 465 A.2d at 1166. We found disbarment to be the appropriate sanction. At the time of the case, Sherman was suspended from the practice of law as a result of a previous sanction from this Court. The conduct that led to the previous sanction had occurred at the same time as the conduct that led to this second proceeding. In finding disbarment to be the appropriate sanction we stated:

"After carefully considering the matter, we accept the findings of Judge Hammerman and conclude, in the circumstances, that disbarment is the appropriate sanction. In so determining, we note that the time period involved in the present case encompasses the same period of time which was involved in the earlier disciplinary matter. We think it evident that Sherman's misconduct over a long period of time is reflective of an utter disregard for the interests of his clients and is further aggravated by the numerous misrepresentations made to his clients. We think Sherman's misconduct clearly demonstrates that he is unfit to continue as a member of the Bar of this State."

*Id.* at 327–28, 465 A.2d at 1166.

The record in the case at bar does not indicate that respondent has received any previous reprimands or sanctions from this Court; nevertheless, the volume and severity of the complaints against respondent lead us to conclude that the appropriate sanction against respondent is disbarment. Respondent has engaged in a pattern of conduct that only the most severe sanction of disbarment will provide the protection to the public that this procedure is supposed to provide. Respondent's lack of diligence, his lack of preparation, his failure to communicate with his clients, his charging of unreasonable fees, his failure to account for and return monies, his misrepresentations, and his failure to comply with Bar Counsel's requests all lead to the most severe sanction of disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST BRIAN L. WALLACE.**