912 A.2d 588

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND, Petitioner,

v.

Patrick J. MUHAMMAD, Respondent.

Misc. Docket AG No. 65, Sept. Term, 2004.

Court of Appeals of Maryland.

Dec. 6, 2006.

BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

## PER CURIAM ORDER

While an attorney disciplinary action was pending before the Court in the above entitled case, the Respondent instituted

an action in the United States District Court for the District of Maryland seeking to remove the case to that Court.

This Court, thereafter, issued an opinion and ordered that the Respondent be disbarred from the practice of law in Maryland.

Subsequently, this Court issued two separate orders staying the disbarment and sealing the disbarment opinion and order.

Eventually, the United States District Court decided that there was no basis for removal under 28 U.S.C. §§ 1441, 1442 or 1443 (2000) and remanded the case to the Court of Appeals of Maryland.

The Respondent next appealed the decision of the District Court to the United States Court of Appeals for the Fourth Circuit. On October 3, 2006, that court dismissed the appeal in part and affirmed in part the judgment of the District Court and its mandate issued on November 22, 2006.

NOW, THEREFORE, it is this 6th day of December, 2006.

ORDERED, by the Court of Appeals of Maryland, that the orders previously issued by this Court staying the disbarment and sealing the opinion of the Court be, and they are hereby, dissolved and the opinion and order of the Court disbarring the Respondent is reinstated, effective immediately.

BELL, C.J.

Having received complaints from seven complainants, charging Patrick J. Muhammad, the respondent, with misconduct, consisting of violations of various of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812, acting at the direction of the Attorney Grievance Commission of Maryland, Maryland Rule 16–751,[1] Bar Counsel filed against the respondent a Petition For Disciplinary Or Remedi-

---

1. Maryland Rule 16–751, as relevant, provides:
   "(a) *Commencement of Disciplinary or Remedial Action.*
   (1) *Upon Approval of Commission.* Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

al Action. The Petition alleged multiple violations of Rules 1.3, Diligence,[2] 1.4, Communication,[3] 1.5, Fees,[4] 1.16, Declining or Terminating Representation,[5] 8.1, Bar Admission and Disci-

---

**2.** Rule 1.3 requires "[a] lawyer [to] act with reasonable diligence and promptness in representing a client."

**3.** The alleged misconduct in this case occurred prior to July 1, 2005, the effective date of the Rules adopted in the Rules Order of February 18, 2005. At that time, Rule 1.4 provided:

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

**4.** Rule 1.5 provided, when the alleged misconduct occurred:

"A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
"(3) the fee customarily charged in the locality for similar services;
"(4) the amount involved and the results obtained;
"(5) the time limitations imposed by the client or by the circumstances;
"(6) the nature and length of the professional relationship with the client;
"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
"(8) whether the fee is fixed or contingent."

**5.** Rule 1.16 provided:

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

plinary Matters,[6] and 8.4, Misconduct.[7] Also alleged was one violation each of Rule 1.1, Competence,[8] and Rule 1.2, Scope of Representation.[9]

We referred the case, pursuant to Rule 16–752(a),[10] to the Honorable Edward R.K. Hargadon, of the Circuit Court for Baltimore City, for hearing pursuant to Rule 16–757(c).[11]

---

6.  Rule 8.1, as relevant, provided, and still provides:
    "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

    \*       \*       \*       \*       \*       \*

    "(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

7.  Rule 8.4 provides, as pertinent:
    "It is professional misconduct for a lawyer to:

    \*       \*       \*       \*       \*       \*

    "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
    "(d) engage in conduct that is prejudicial to the administration of justice; ..."

    \*       \*       \*       \*       \*       \*

8.  Rule 1.1 provided:
    "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

9.  Rule 1.2, as relevant, provided:
    "(a) A lawyer shall abide by a client's decisions concerning the objectives of the representation, subject to paragraphs (c), (d) and (e), and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify."

10.  Rule 16–752(a) provides:
    "(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

11.  Maryland Rule 16–757(c) provides:

Although he was served, the respondent did not file a response, resulting in the entry of an order of default.[12] Following a hearing, the hearing court made findings of facts, as follows:

### Complaint of Katrina Frisby

"In September 2001, Katrina Frisby (hereinafter 'Ms. Frisby') retained Respondent's services with respect to any and all claims she may have arising from an automobile accident that occurred on or about September 22, 2001. Respondent and Ms. Frisby signed a contingent fee retainer agreement on or about September 25, 2001. At the time she retained Respondent, Ms. Frisby gave Respondent her original medical bills and documents relating to her automobile accident.

"In 2001, Respondent sent letters to Ms. Frisby's medical care providers requesting Ms. Frisby's medical records. On or about January 9, 2002, Respondent sent a letter to the opposing party's insurance company, State Farm Insurance Company, with copies of Ms. Frisby's medical records and bills, requesting to discuss settlement. After January 2002, Respondent ceased communication with Ms. Frisby. Respondent did not return Ms. Frisby's phone calls to his office or his cellular phone. Upon the request of Ms. Frisby, meetings

---

"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

12. Rather than a response to the Petition, the respondent moved to dismiss the Petition. The hearing court denied that motion. Subsequently, the petitioner made a motion for an Order of Default, which the hearing court granted, the respondent, apparently having failed to respond to the motion, in addition to having failed to file a response. The respondent did move to vacate the order of default; however, he failed to appear at the hearing scheduled to address that motion. He also failed to appear at the subsequently scheduled default hearing.

were scheduled between Respondent and Ms. Frisby. Respondent cancelled or failed to appear for these appointments.

"In March 2003, Ms. Frisby went to James L. Rhodes, Esquire, Respondent's former law partner, to assist her in obtaining her file. On March 31, 2003, Mr. Rhodes sent a letter to Respondent requesting the return of Ms. Frisby's file. However, Respondent did not respond to that letter. Accordingly, on or about May 21, 2003, Mr. Rhodes sent another letter to Respondent, via certified mail, requesting the return of Ms. Frisby's file. On or about June 6, 2003, Respondent sent a letter to Mr. Rhodes refusing to return Ms. Frisby her file until she paid him $2000, which he claimed was an 'earned fee in the event of termination before the completion of the representation.' Ms. Frisby requested that Respondent provide her with his statement of services and accounting for his claim of $2000 in fees. Respondent, however, did not respond to her request.

"On November 13, 2003, Ms. Frisby discharged Respondent and retained a new attorney, Phillip L. Potts. Esquire, who also requested that Respondent return Ms. Frisby's file. Respondent still did not return Ms. Frisby's original documents. Approximately four (4) months later, on or about March 9, 2004, Respondent filed a one page complaint in the District Court of Maryland for Baltimore City on behalf of Ms. Frisby. The complaint was hand-written on a form Statement of Claim. Respondent did not advise Ms. Frisby or her new attorney that he filed a complaint on her behalf. The complaint was filed after Ms. Frisby filed a grievance complaint with the Attorney Grievance Commission of Maryland. No other action was taken after Respondent filed the complaint.

"Other than writing the letters to the medical care providers and the insurance company, Respondent performed no other work on behalf of Ms. Frisby during the time he was retained by her. Although Respondent filed a complaint in court on behalf of Ms. Frisby, he did so several months after Ms. Frisby discharged him and he failed to advise her that he had done so. During the time he was retained by Ms. Frisby,

Respondent failed to communicate with her regarding the status of her case.

"On May 16, 2003, Bar Counsel sent a letter to Respondent requesting copies of his file for Ms. Frisby. On or about May 29, 2003, Respondent sent a letter to Bar Counsel stating that he would not release his file of Ms. Frisby to Bar Counsel until he received an executed release by Ms. Frisby, and to direct any further communication to his attorney, Jill P. Carter, Esquire. On June 26, 2003, Deputy Bar Counsel sent Respondent's purported attorney, Ms. Carter, the requested executed authorization of Ms Frisby permitting the release of her file. Ms. Carter later advised Assistant Bar Counsel Marianne J. Lee, that she was not representing Respondent. On October 14, 2003 and November 3, 2003, Assistant Bar Counsel Lee sent letters to Respondent, again requesting copies of his client file of Ms. Frisby. Respondent did not respond to those letters.

\*     \*     \*

*"Complaint of Wanda Owens*

"In September 2000, Respondent was retained by Wanda Owens (hereinafter 'Ms. Owens') to represent her in a personal injury claim. Ms. Owens was injured in September 2000, after a fall at Lexington Market in Baltimore, Maryland. Respondent agreed to handle Ms. Owens' matter on a contingent fee basis. The terms of the contingent fee agreement were not communicated to Ms. Owens in writing. However, Respondent advised Ms. Owens that he would file suit on her behalf.

"During the course of the representation, Ms. Owens tried to communicate with Respondent. Ms. Owens called Respondent on several occasions, often leaving messages asking Respondent to contact her. However, many of her phone calls went unreturned. From approximately September 2001 until September 2003, Respondent took no action on behalf of Ms. Owens with respect to her claim. Accordingly, on or about September 4, 2003, Ms. Owens sent a letter to Respondent discharging him and requesting that he surrender her papers

to her, so that she could retain a new attorney. Respondent did not return Ms. Owens' papers to her. On September 8, 2003, or four (4) days after being terminated by Ms. Owens, Respondent filed a Complaint in the District Court of Maryland on behalf of Ms. Owens against the Mayor and City Council of Baltimore City, Andy's Steaks and Subs, Cajun Joe's Take Out, and Berger's Food. Respondent presented a check drawn from his business account, in the amount of $20, to the Clerk of the District Court of Maryland, for the filing fee. However, the check was returned for insufficient funds. The court clerk notified Respondent of his returned check, but he did not present a new check to the District Court of Maryland for payment of the filing fee until November 3, 2003, two (2) months after the initial filing of the Complaint.

On or about September 10, 2003, the District Court of Maryland sent a Memorandum notifying Respondent that the writs of summons could not be issued until he provided to the court clerk the names of the officers, resident agents or persons authorized to accept service for the named defendants in the Owens Complaint. Respondent failed to do so. As a result. Respondent failed to perfect service on the defendants.

"During Bar Counsel's investigation. Respondent failed to respond in a timely manner to requests for information. Despite repeated requests, Respondent failed to provide copies of his client file of Ms. Owens to the Office of Bar Counsel. On October 14, 2003 and November 25, 2003, Assistant Bar Counsel Lee sent letters to Respondent requesting copies of his file of Ms. Owens. On or about December 15, 2003, Respondent sent a letter to Ms. Lee stating that he would provide her with 'all requested information prior to the Christmas holiday.' However, Respondent did not do so.

*　*　*　*　*　*

<em>"Complaint of Star J. Branch</em>

"On or about April 24, 2002, Star J. Branch (hereinafter 'Ms. Branch') retained Respondent to represent her in a disability contract and discrimination claim against the apart-

ment complex where she resided, Bren Brook Apartments. Respondent agreed to handle Ms. Branch's matter for a flat fee of $5,000, plus a ten percent (10%) contingency fee of any monies collected from settlement or trial. Respondent and Ms. Branch executed the retainer agreement on April 24, 2002. Ms. Branch paid Respondent $3,000 on March 11, 2002. She paid the remaining balance of the $5,000 flat fee, in installments, by May 28, 2003.

"On September 23, 2002, Respondent filed a Complaint for housing discrimination in the Circuit Court for Baltimore County on behalf of Ms. Branch against Bren Brook Apartments and its management company, Equity Management, Inc. On February 21, 2003, the Defendants filed their Answer to the Complaint. On March 11, 2003, the Defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. On March 28, 2003, Respondent filed a Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment; however, the response was insufficient and did not comply with the Maryland Rules. Respondent's one-page Response was approximately three sentences long and contained a completely different caption than that of Ms. Branch's case, naming the Defendants as 'General Motors.' Respondent also failed to attach an affidavit in response to Defendants' allegations.

"A hearing on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Plaintiff s Response was set for August 7, 2003. Notice of the hearing was sent to Respondent on or about July 9, 2003. Respondent failed to appear at the August 7, 2003 hearing. On or about August 6, 2003, Respondent allegedly prepared a Request for Postponement of the August 7, 2003 hearing, but he did not file it with the Court. Moreover, Respondent did not advise Ms. Branch of the August 7, 2003 hearing. Furthermore, Respondent did not advise Ms. Branch that he would not appear at the August 7, 2003 hearing.

"On August 7, 2003, The Honorable Patrick Cavanaugh granted Defendants' Motion to Dismiss, or in the Alternative,

Motion for Summary Judgment. Respondent did not advise Ms. Branch that the Court granted the motions. On September 8, 2003, Respondent filed an Interlocutory Appeal in the Court of Special Appeals. However, Respondent failed to file a Prehearing Information Report, as required by Maryland Rule 8–205. On November 3, 2003, the Court of Special Appeals dismissed the appeal filed by Respondent for failure to file an Information Report. Respondent did not advise Ms. Branch that the Court of Special Appeals dismissed her appeal. Respondent took no other action on behalf of Ms. Branch after the dismissal of the appeal.

"Respondent essentially abandoned Ms. Branch in her civil matter. After retaining Respondent, Ms. Branch tried to communicate with him, via telephone; however, Respondent failed to answer or return her calls.

"During Bar Counsel's investigation, Respondent failed to respond to requests for information from the Office of Bar Counsel. On December 22, 2003, Assistant Bar Counsel Lee sent a letter to Respondent requesting his written response to the allegations in Ms. Branch's complaint. Respondent did not respond to that letter. On January 7, 2004, Ms. Lee sent another letter to Respondent, via certified mail, requesting his written response to Ms. Branch's complaint. Respondent, again, did not respond to Ms. Lee's letter. The certified letter was returned marked, 'unclaimed.'

\* \* \* \* \* \*

*"Complaint of Mitchell Lee Gresham*

"In October 2003, Mitchell Lee Gresham (hereinafter 'Mr. Gresham') retained Respondent to represent him in a criminal matter. Mr. Gresham retained Respondent to file a motion for modification of his sentence and to assist him in obtaining home detention.

"Mr. Gresham's wife, Felicia Aminah Gresham (hereinafter 'Ms. Gresham'), paid Respondent an initial retainer of $3,500. After receipt of the $3,500, Respondent took no action on behalf of Mr. Gresham and did not keep his client informed about the status of his representation. Respondent also did

not respond to inquiries made by Mr. and Mrs. Gresham. Based upon Respondent's failure to provide services of any value and to pursue any action advancing the client's interests, the fees accepted and retained by Respondent were unreasonable."

"Although Respondent stopped all work on Mr. Gresham's matter, he did not take steps to protect Mr. Gresham's interest, such as giving reasonable notice that the representation was terminated and refunding any advance payment of fee that had not been earned. Moreover, Respondent failed to respond to Mr. and Mrs. Gresham's requests for a refund of the $3,500 paid to Respondent.

"During Bar Counsel's investigation of Mr. Gresham's complaint. Respondent failed to respond to written requests for information. More specifically, Respondent did not respond to letters from the Office of Bar Counsel dated January 8, 2004 and January 28, 2004, requesting his written response to Mr. Gresham's complaint.

\* \* \* \* \* \*

*"Complaint of Leonard A. Washington, Sr.*

"On or about April 5, 2003, Leonard A. Washington, Sr. (hereinafter 'Mr. Washington') retained Respondent's services to secure post conviction relief to obtain a modification of his sentence. Respondent agreed to represent Mr. Washington for a retainer fee of $1,250. Respondent signed the retainer agreement on or about April 5, 2003. The retainer agreement provided that 'the attorney will not enter his appearance on behalf of client in any court referred to herein until $700 of the fee has been paid.' On or about April 5, 2003, Gwendolyn Washington, on behalf of Mr. Washington, paid Respondent $700.

"On or about June 20, 2003, Respondent sent Mr. Washington a letter advising him of the work he had done on his behalf. However, Respondent never produced to Mr. Washington copies of the work he claimed that he had done on Mr. Washington's behalf. After receipt of the $700, Respondent did not enter his appearance in court on behalf of Mr. Wash-

ington and did not keep Mr. Washington informed about the status of the representation. Mr. Washington wrote letters to Respondent requesting information regarding the status of his matter. However, Respondent did not respond to any of Mr. Washington's letters or inquiries.

"Based on Respondent's failure to provide services of any value and to pursue any action advancing the client's interests, the fees accepted and retained by Respondent were unreasonable. Although Respondent stopped all work on Mr. Washington's case, he did not take steps to protect Mr. Washington's interest, such as giving reasonable notice that the representation was terminated and refunding any advance payment of the fee that had not been earned. Furthermore, Respondent failed to respond to Mr. Washington's request for a refund of the $700 retainer.

"During Bar Counsel's investigation of Mr. Washington's grievance complaint, Respondent failed to respond in a timely manner to written requests for information. He did not respond to letters from the Office of Bar Counsel, dated January 29, 2004 and February 13, 2004, requesting his written response to Mr. Washington's complaint.

*   *   *   *   *   *

### "Complaint of Kimberly Hawkins

"On or about April 30, 2003, Kimberly Hawkins (hereinafter 'Ms. Hawkins') retained Respondent to represent her with respect to any claims she may have had arising from an automobile accident that occurred on April 28, 2003. Respondent agreed to represent Ms. Hawkins on a contingent fee basis. Respondent and Ms. Hawkins signed the contingent retainer agreement on April 30, 2003. After their meeting on April 30, 2003, Respondent referred Ms. Hawkins to medical care providers for treatment of her injuries incurred during the automobile accident and advised her that he would recover payment of her medical bills on her behalf. When Ms. Hawkins informed Respondent of her medical bills, Respondent advised her that he was working on her matter. Respondent, however, had performed no work on behalf of Ms.

Hawkins. Moreover, Respondent did not respond to inquiries made by Ms. Hawkins regarding the status of her matter. Respondent failed to return Ms. Hawkins' telephone calls and messages to his office and cell phone.

"After Ms. Hawkins filed a complaint with the Attorney Grievance Commission, Respondent called Ms. Hawkins and told her that he was no longer her lawyer and that he was going to sue her for $200,000 for defamation. Although Respondent stopped all work on Ms. Hawkins' case and gave notice terminating his representation of Ms. Hawkins, he did not take steps to protect Ms. Hawkins' interests, including surrendering papers to which Ms. Hawkins was entitled.

\* \* \* \* \* \*

### "Complaint of Ernestine E. Easy

"In February 2004, Ernestine E. Easy (hereinafter 'Ms. Easy') retained Respondent to represent Shakia Rouzer (hereinafter 'Ms. Rouzer') in the District Court of Maryland for Baltimore City on charges of first and second-degree assault, destruction of property, use of deadly weapon, and burglary in the first degree. The charges arose from a domestic dispute with Ms. Rouzer's child's father.

"The initial contact to employ Respondent was made by Ms. Rouzer's great aunt, Ernestine E. Easy (hereinafter 'Ms. Easy') and Ms. Rouzer's mother, Angela Lacruze (hereinafter 'Ms. Lacruze'). Respondent agreed to represent Ms. Rouzer in her criminal matter in District Court for the fee of $1,500. Respondent and Ms. Lacruze signed the retainer agreement on or about February 25, 2004. Ms. Easy paid Respondent a sum of $400 on February 25, 2004. In addition, Ms. Lacruze paid Respondent $1500 on that same date. Combined, the payments made by Ms. Easy and Ms. Lacruze exceeded the $1,500 provided in the retainer agreement for the District Court representation of Ms. Rouzer.

"Ms. Rouzer's preliminary hearing was scheduled for March 23, 2004. However, Respondent did not enter his appearance on behalf of Ms. Rouzer. Moreover, on March 23, 2004, Respondent failed to appear for the preliminary hearing. As

a result of Respondent's failure to enter his appearance on behalf of Ms. Rouzer, an Assistant Public Defender was assigned to represent Ms. Rouzer on the day of the hearing. During the preliminary hearing, the Assistant State's Attorney entered a nolle prosequi on the charges of first degree assault and burglary in first degree, and placed the remaining charges on the stet docket."

Based on these findings of fact, the hearing court concluded that the respondent violated each of the Rules of Professional Conduct with which he was charged. Thus, in each of the cases, the court found a violation of Rules 1.3, 1.4, 1.16(d), and 8.4(d). With respect to the Rule 1.3 violations, the hearing court's conclusion followed from the respondent's having, "after being engaged to provide legal services to Ms. Frisby, failed to act with reasonable diligence and promptness in providing legal services for which he had been engaged." The Rule 1.4 violations were premised on the respondent's failure to keep his clients reasonably informed as to the status of their matters and to respond to inquiries regarding the status of their cases "to the extent reasonably necessary to permit [them] to make informed decisions regarding the representation," as, for example, in the case of Wanda Owens, "by not explaining that he had filed a complaint on her behalf after she discharged him and that he had failed to perfect service on the defendants." That, upon being terminated, the respondent did not take steps in any of the cases to protect the interests of his clients constituted the basis for finding the 1.16 violations. The hearing court concluded, from the totality of the respondent's conduct in each case, that the administration of justice was prejudiced thereby.

In Frisby, Owens, Branch, Gresham and Washington, the hearing court, in addition, concluded that the respondent committed a violation of Rule 8.1(b). That conclusion followed from the factual findings in those cases that the respondent failed to respond to the lawful demands for information made by Bar Counsel.

There were more violations found. In Frisby, the hearing court concluded that, by not abiding by the client's decisions concerning her objectives and by not consulting her as to the approach to be taken, the respondent also violated Rule 1.2, while in Branch, the additional violation found was Rule 1.1, the hearing court determining that the respondent's representation was not competent, and in Gresham, Washington and Easy, it was a Rule 1.5(a) violation. The latter violation was, as characterized by the hearing court, "that Respondent did not render services of any value, Respondent collected and has retained an unreasonable legal fee."

Finally, in Hawkins and Easy, the hearing court determined that the respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(c). In Hawkins, the dishonesty, fraud, deceit, or misrepresentation consisted of the respondent's "inform[ing] Ms. Hawkins that he was still working on her personal injury matter, when, in fact, he had not done any work on her case." In Easy, it was two-fold, first by misrepresenting to Bar Counsel the "sole" reason for the dismissal of Ms. Rouzer's case and then by failing to pay the civil default judgment entered against him in the District Court.

Neither the petitioner nor the respondent took exceptions to the hearing court's findings of fact or conclusions of law. As indicated, the respondent did not appear for the hearing on the default judgment. He did, however, appear at oral argument before us and seek to challenge the findings and conclusions, which he neither challenged below nor to which he filed exceptions in this Court. As we did at argument, we decline to consider the respondent's belated challenges.[13]

---

13. The respondent asked for a postponement. When that request was denied, he asked for the opportunity to file a post hearing memorandum. That request was granted, it being understood that the effect or weight to be given to the respondent's filing would be determined by what was filed and its relevance. The respondent filed a Motion for Appropriate Relief. In that Motion, he alleges that, because he never received the hearing court's findings and conclusions, when Rule 16-757 requires that they be prepared and filed in the record and mailed to

The petitioner filed *Petitioner's Recommendation For Sanction,* in which it seeks the respondent's disbarment. Although the respondent appeared at oral argument, he did not file any pleading; he simply asked for a postponement and, that request having been denied, sought to avoid disbarment or significant sanction.

In support of its disbarment recommendation, the petitioner emphasizes the number of cases in which the respondent was found to have violated Rules of Professional Conduct, the nature of the conduct those violations reflect—implicating competence, diligence, client relations, the quality of the legal process, and personal honesty and integrity—and the fact that the respondent, in nearly every case did not cooperate with Bar Counsel's investigation. It also relies on *Attorney Griev. Comm'n v. Wallace,* 368 Md. 277, 793 A.2d 535 (2002). In that case, the respondent was found to have committed multiple violations of the Rules of Professional Responsibility, including, as in this case, Rules 1.3, 1.4, 1.5(a) 1.16(d), 8.1(b) and 8.4(c) and (d), arising out of six separate complaints. The respondent was disbarred, despite having no prior disciplinary history. Our sanction decision was influenced, and dictated,

---

each party, there has been a violation of Rule 16–757. He asks, therefore, that he not be sanctioned before he has had the opportunity to review the findings and conclusions and file exceptions, if appropriate. Alternatively, he urges the remand of this case to the Circuit Court for further proceedings. In its response, the petitioner prays that the Motion be denied. It maintains, first, that the respondent "had ample notice of the fact that the Findings of Fact and Conclusions of Law were filed and many opportunities to review same." Second, the petitioner points out the respondent, who represented himself, is charged with the responsibility of keeping himself apprised of his case and if he does not do so, he has only himself to blame. Finally, the petitioner contends:

"As clearly indicated in the record, the respondent appears to have a habit of making excuses, such as claiming that he failed to receive notice, of seeking postponements at the last minute and/or misrepresenting facts to the court to compensate for his failures. The Respondent's conduct in this case perfectly exemplifies his misconduct in his representation of numerous clients and his continual disregard of his legal obligations to his clients and the court."

The respondent's *Motion for Appropriate Relief* is denied.

by "the volume and severity of the complaints against the respondent." *Id.* at 293, 793 A.2d at 545. We explained:

> "Respondent has engaged in a pattern of conduct that only the most severe sanction of disbarment will provide the protection to the public that this procedure is supposed to provide. Respondent's lack of diligence, his lack of preparation, his failure to communicate with his clients, his charging of unreasonable fees, his failure to account for and return monies, his misrepresentations, and his failure to comply with Bar Counsel's requests all lead us to the most severe sanction of disbarment.

*Id.*

What we said in *Wallace* is applicable largely to the facts of the case *sub judice.* In seven separate complaints, the respondent has been found: to have acted with a lack of diligence in handling his clients' matters; to have failed to communicate with his clients or respond to their inquiries; not to have acted to protect his clients' interest, upon the termination of his services; and to have acted, and performed his representational responsibilities, in a manner prejudicial to the administration of justice. In five of the cases, the respondent was found, in addition, to have failed to comply with Bar Counsel's requests for information. In two of the cases, the respondent was found to have charged an unreasonable fee and to have engaged in dishonest, fraudulent and deceitful conduct, making misrepresentations to his clients. And there is no mitigating evidence or circumstances evident in this record. *See Attorney Griev. Comm'n v. West,* 378 Md. 395, 416, 836 A.2d 588, 600 (2003) (noting that "[t]he primary distinction between *Wallace* and the instant case is the lack of mitigating factors in the former case").

Accordingly, as in *Wallace* and, consistent with the petitioner's recommendation, the "most severe sanction of disbarment," 368 Md. at 293, 793 A.2d at 545, is warranted.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PUR-

SUANT TO MARYLAND RULE 16–761(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST PATRICK J. MUHAMMAD.